Case No. 23-1182

———————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

JANE DOE,

*Plaintiff-Appellant,*

v.

CHARLOTTE MECKLENBURG BOARD OF EDUCATION, BRADLEY
LEAK, ANTHONY PERKINS, AND CITY OF CHARLOTTE,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE
3:18-CV-00586-RJC-DSC
District Judge Robert J. Conrad

———————————————————————

## OPENING BRIEF OF PLAINTIFF-APPELLANT
———————————————————————

SUBMITTED BY:
Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES ................................................................... 2

STATEMENT OF CASE ...................................................................... 3

    Statement of Facts ......................................................................... 3

    Procedural History ...................................................................... 10

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT ...................................................................................... 17

  I.  The District Court erred in granting summary judgment to Defendant-Appellees Leak and Perkins because Plaintiff-Appellant raised genuine disputes of material precluding summary judgment. ................................... 17

      a.  Leak and Perkins obstructed Ms. Doe's ability to obtain legal justice by withholding evidence and misleading officials .......................................................................... 19

      b.  Leak and Perkins' bad faith conduct precludes their ability to claim public official immunity on Counts IV and V. ....................... 23

      c.  The District Court should have applied the general constitutional rule to deny Leak and Perkins qualified immunity ........................... 24

  II.  The District Court's erroneous rulings on Plaintiff-Appellant's motions *in limine* resulted in a Rule 50 judgment for City and a jury verdict for Board, which this Court should reverse. ................................. 26

      a.  The District Court should reverse both the motion *in limine* ruling denying Ms. Doe's admission of direct evidence regarding City's negligent employment of Leak as SRO and the Rule 50 judgment. ....................................................................... 27

b.  Without any reasoning, the District Court denied Ms. Doe a spoilation inference, impeding her ability to prove Count I against Board and Count VI against City at trial. ...............................................31

III. The District Court abused its discretion by reducing the sanctions against Defendant-Appellees City and Board for repeated discovery abuses that prejudiced Plaintiff-Appellant during summary judgment and at trial. .......35

CONCLUSION ....................................................................................................41

CERTIFICATE OF COMPLIANCE ...................................................................42

CERTIFICATE OF SERVICE..............................................................................43

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGES**

Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564 (1985)...........37

Anderson v. Creighton, 483 U.S. 635 (1987)..........................................................25

Anderson v. Foundation for Advancement, Education, & Employment of
American Indians, 155 F.3d 500 (4th Cir. 1998) .............................................36, 38

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .........................................18

Ashcroft v. al-Kidd, 563 U.S. 731 (2011).........................................................24, 25

Ballengee v. CBS Broadcasting, Inc., 986 F.3d 344 (4th Cir. 2020) ....................17

Belk v. Charlotte-Mecklenburg Board of Education, 269 F.3d 305 (4th Cir. 2001)
................................................................................................................ 36-38, 40

Blackburn v. Carbone, 703 S.E.2d 788 (N.C. Ct. App. 2010) ..............................19

Caraway v. City of Elizabeth City, North Carolina, 854 Fed. Appx. 472
(4th Cir. 2021) ................................................................................................. 30-31

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).......................................................17

Cole v. Keller Industries, Inc., 132 F.3d 1044 (4th Cir. 1998) .............................31

Cooper v. Sheehan, 735 F.3d 153 (4th Cir. 2013) .................................................18

Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979) ..............................................18

Doe v. Fairfax County School Board, 1 F.4th 257 (4th Cir. 2021) .......................23

Dorman v. Annapolis OB-GYN Associates, P.A., 781 Fed. Appx. 136

(4th Cir. 2019) ....................................................................27

Drewitt v. Pratt, 999 F.2d 774 (4th Cir. 1993) ...................................17

E.I. DuPont de Nemours & Company v. Kolon Industries, Inc., 564 Fed. Appx.

710 (4th Cir.), *cert. denied*, 574 U.S. 987 (2014) ...................................28

Evans v. Chalmers, 703 F.3d 646 (4th Cir. 2012)...................................19

Everett v. Prison Health Services, 412 Fed. Appx. 604 (4th Cir. 2011) ...............36

Feminist Majority Foundation v. Hurley, 911 F.3d 674 (4th Cir. 2018) ..............34

Garraghty v. Jordan, 830 F.2d 1295 (4th Cir. 1987)...............................28

Gilliam v. Sealey, 932 F.3d 216 (4th Cir. 2019)............................... 25-26

Grad v. Kaasa, 321 S.E.2d 888 (N.C. 1984) ...........................................24

Harlow v. Fitzgerald, 457 U.S. 800 (1982)....................................... 24-25

Higgins v. E.I. DuPont de Nemours & Company, 863 F.2d 1162 (4th Cir. 1988) ...

.......................................................................................17

Hope v. Pelzer, 536 U.S. 730 (2002) ....................................................25

Houck v. Howell, 2016 WL 1599806 (W.D.N.C. Apr. 21, 2016) ........................19

In re D.D., 554 S.E.2d 346, *appeal dismissed and disc. review denied*, 354 N.C.

572 (2001) ..........................................................................19

In re Kivett, 209 S.E.2d 442 (N.C. 1983) ...............................................19

In re S.W., 614 S.E.2d 424 (N.C. Ct. App. 2005)...................................19

Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) .......................................26

Johnson v. Ruark Obstetrics, 395 S.E.2d 85, *reh'g denied*, 399 S.E.2d 133
(N.C. 1990).....................................................................................................18

King v. American Power Conversion Corporation, 181 Fed. Appx. 373
(4th Cir. 2006) ................................................................................................32

Lamb v. Littman, 38 S.E. 911 (N.C. 1901) .............................................................29

Malley v. Brigg, 475 U.S. 335 (1986)....................................................................25

Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,
475 U.S. 574 (1986) ........................................................................................17

Mays v. Sprinkle, 992 F.3d 295 (4th Cir. 2021) ..............................................24, 25

McMillan v. Cumberland County Board of Education, 734 Fed. Appx. 836
(4th Cir. 2018) ................................................................................................24

Minter v. Wells Fargo Bank, N.A., 762 F.3d 339 (4th Cir. 2014) .........................28

Moore v. Equitrans, L.P., 27 F.4th 211 (4th Cir. 2022) ........................................27

Mullenix v. Luna, 577 U.S. 7 (2015) .....................................................................25

Mutual Federal Savings & Loan Association v. Richards & Associates, Inc.,
872 F.2d 88 (4th Cir. 1989).....................................................................36, 38, 40

National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976)
.......................................................................................................36, 38, 40

New Jersey v. T.L.O., 469 U.S. 325 (1985).............................................................19

Pugh v. Louisville Ladder, Inc., 361 Fed. Appx. 448 (4th Cir. 2010) ...................26

Reichle v. Howards, 566 U.S. 658 (2012) ...........................................25

Russell v. Microdyne Corporation, 65 F.3d 1229 (4th Cir. 1995) ...................17, 18

Sauers v. Winston-Salem/Forsyth County Board of Education,

179 F.Supp.3d 544 (M.D.N.C. 2016).......................................................29

Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) ........................................18

Silvestri v. General Motors Corporation, 271 F.3d 582 (4th Cir. 2001)...............31

Smith v. Hefner, 68 S.E. 2d 783 (N.C.1952) ........................................24

Smith v. Jackson City Board of Education, 608 S.E.2d 399 (N.C. App. 2005).........

.......................................................................... 19, 23-24

Summers v. City of Charlotte, 2022 WL 2019963 (W.D.N.C. June 6, 2022) .......38

Taylor v. Riojas, 141 S. Ct. 52 (2020) ..................................................25

Turner v. U.S., 736 F.3d 274 (4th Cir. 2013)...........................................31

U.S. v. Chisholm, 652 Fed. Appx. 196 (4th Cir. 2016) ..................................26, 28

U.S. v. Delfino, 510 F.3d 468 (4th Cir. 2007) ........................................26

U.S. v. Diebold, Inc., 369 U.S. 654 (1962) ...........................................17

U.S. v. Graves, 551 Fed. Appx. 680 (4th Cir. 2014)...............................27

U.S. v. Hernandez, 212 Fed. Appx. 229 (4th Cir. 2007)........................26

U.S. v. Lanier, 520 U.S. 259 (1997).....................................................25

U.S. v. Miller, 61 F.4th 426 (4th Cir. 2023)) ........................................28

U.S. v. Penello, 668 F.2d 789 (4th Cir. 1982)......................................28

<u>U.S. v. White</u>, 405 F.3d 208 (4th Cir.), *cert denied*, 435 U.S. 1023 (2005) ..........26

<u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497 (D. Md. 2010)...........31

<u>Vodusek v. Bayliner Marine Corporation</u>, 71 F.3d 148 (4th Cir. 1995)...............32

<u>Wilson v. Volkswagen of Am., Inc.</u>, 561 F.2d 494 (4th Cir. 1977).................37, 40

<u>Wall v. Rasnick</u>, 42 F.4th 214 (4th Cir. 2022) ........................................... 31, 35-36

<u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100 (1969) .................37

## STATUTES

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1331 ...................................................................................................1

28 U.S.C. § 1367 ...................................................................................................1

28 U.S.C. § 636 ..........................................................................................36, 37, 39

42 U.S.C. § 1983 ......................................................................................10, 18, 25

Fed. R. Civ. P. 37 ............................................................................... 16, 36-41

Fed. R. Civ. P. 50 ............................................ 2, 13, 15, 26, 27, 29, 30, 34

Fed. R. Civ. P. 52 ...............................................................................................37

Fed. R. Civ. P. 56 ................................................................................. 10-11, 17

Fed. R. Civ. P. 72 ..........................................................................................36, 39

Fed. R. Evid. 401.................................................................................................27

Fed. R. Evid. 402.................................................................................................27

Fed. R. Evid. 403 ................................................................................27-28

N.C. Gen. Stat. § 14-202.4(d)(3a) ................................................................ 3

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. (J.A. 042.) The Fourth Circuit has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291. (J.A. 001-038.[1])

---

[1] *See infra* (Statement of the Case – Procedural History).

**STATEMENT OF ISSUES**

**I.**     Did the District Court err by granting summary judgment to Defendant-Appellees Bradley Leak and Anthony Perkins despite Plaintiff-Appellant raising genuine disputes of material fact regarding their bad faith conduct of withholding information about her disheveled appearance and oral rape reports from officials?

Proposed Answer: Yes.

**II.**     Did the District Court err by (A) granting a Rule 50 judgment to Defendant-Appellee City of Charlotte on Count VI (Negligent Employment) after it arbitrarily excluded Leak's internal affairs history at trial, which showed City had notice of his unfitness to serve as a School Resource Officer (SRO); and (B) arbitrarily denying Plaintiff-Appellant a spoliation inference against Defendant-Appellees at trial for their failure to preserve investigative records and video footage evidence, thus impeding her ability to prove the element of deliberate indifference under Count I (Title IX), such that a new jury trial is warranted?

Proposed Answer: Yes.

**III.**     Did the District Court abuse its discretion by reducing the Magistrate Judge's recommended sanctions, which were neither clearly erroneous nor contrary to law, thus denying Ms. Doe a full remedy for Defendant-Appellees engaging in years of discovery abuses that doubled her litigation costs and expenses?

Proposed Answer: Yes.

*Statement of Facts*

Defendant-Appellee Charlotte Mecklenburg Board of Education (Board) oversees Myers Park High School (MPHS) (J.A. 773-774), which is a large, 15-building campus surrounded by woods and trails (J.A. 603-605 at 27:15-29:24; J.A. 2305). Board contracted with Defendant-Appellee City of Charlotte (City) to obtain school resource officers (SROs) (J.A. 2161–2166), which are "regularly present in a school for the purpose of promoting and maintaining safe and orderly schools," N.C. Gen. Stat. § 14-202.4(d)(3). City relegated Defendant-Appellee Bradley Leak to the MPHS SRO position despite knowing he was unfit to serve. (J.A. 3194-3199.)

City first assigned Leak to serve as an SRO ████████████████ ████████████████████████████████████████. (J.A. 3194-3197; J.A. 230 at 53:11-20). ████████████████████



████. Leak then transferred out of the SRO role (J.A. 230 at 53:11-54:24) ████ ████████████████████████████ (J.A. 233 at 56:1-25). ████████ ████████████████████████████████ (J.A. 3199), City assigned Leak again to serve as an SRO (J.A. 230-232 at 53:25-55:19) without providing him updated training for this position (J.A. 234-235 at 57:20-58:9). ████████████████████████████████████████████

████████████████████████████ (J.A. 3199), City kept him in the SRO role until his retirement. (J.A. 251-254 at 94:24-97:16). ████████████

████████████████████████████████████████████████

████████████████████████████████████████████, raising serious questions about his credibility and fitness as an officer.

Due to his inherent unfitness to serve, Leak demonstrated a bias towards intimate partner violence reports he received while MPHS's SRO. (J.A. 251-254 at 94:24-97:16.) Specifically, during the Fall 2014 semester, 14-year-old female student Jill Roe *twice* reported that a male classmate, her ex-boyfriend, was sexually harassing her and had raped her in the MPHS woods. (J.A. 3276-3279.) MPHS contractor Stacy Weinstein helped Ms. Roe report to Leak the first time (J.A. 3277-3279 at 4:4-6:24), as did student J.C.H., who then witnessed Leak dismiss this report as "non-criminal"[2] (J.A. 3280-3282). Leak also dismissed Ms. Roe's second report, resulting in MPHS Principal Mark Bosco threatening Ms. Roe with disciplinary action if she pursued the report further. (J.A. 3273-3274, ¶¶ 9-13.)

During his deposition, Leak denied receiving any other woods-based sexual assault reports while SRO beyond that of Ms. Doe and Ms. Roe.[3] (J.A. 317 at 160:1-

---

[2] Defendant-Appellees failed to produce any CMPD incident report on Ms. Roe.

[3] Notably, Board publicly denied that Ms. Doe and Ms. Roe reported rapes to MPHS officials. *See* Nick Ochsner, *CMS posts, then deletes statement after WBTV's Myers Park Investigation. Still won't answer questions.*, WBTV (June 14, 2023),

12.)  City then withheld contradictory evidence showing Leak receiving a rape report from 15-year-old female student S.B.  (J.A. 2194-2207.[4])  During the Fall 2014 semester, with support from classmate S.C., S.B. reported to Leak that her then-boyfriend had forcibly raped her in the MPHS woods and was now harassing her.  (J.A. 931-933 at 87:22-89:21; J.A. 3207-3213.)  Leak believed S.B.'s report due to the accused student's history of sexual misconduct in the MPHS woods.[5]  (J.A. 3207-3213.)  Despite this, Leak dismissed the report, claiming nothing could be done.  (*Id.*)  He then filed a false report claiming S.B. was only "uncomfortable," but there was no force during the incident.  (J.A. 2194-2207; J.A. 936-940 at 92:15-96:15.)  During a Fall 2015 semester student assembly, Board announced its policy of deliberate indifference towards campus sexual assaults when Principal Bosco (alongside Perkins and Leak) announced that female students would not be protected from male students in the woods.  (J.A. 957-960 at 113:19-116:6; J.A. 3274, ¶ 14.)

On November 1, 2015, 18-year-old male classmate Q.W. asked 17-year-old Jane Doe to skip school for a sexual encounter (J.A. 2264-2291), which she declined to do on November 2, 2015 (J.A. 2292-2295).  Before school started on November 3, 2015, Q.W. repeatedly pressured Ms. Doe to skip while she declined.  (J.A. 2296-

---

https://www.wbtv.com/2021/06/14/cms-posts-then-deletes-statement-after-wbtvs-myers-park-investigation-still-wont-answer-questions/.
[4] *See also* Dist. Ct. Docs. #177, 179-2.
[5] Directly suggesting Leak withheld other MPHS woods-based sexual assaults from Ms. Doe's counsel.  (J.A. 317 at 160:1-12.)

2304; J.A. 1866.) When Q.W. arrived on campus, he kept asking Ms. Doe in person to skip. (J.A. 652 at 29:6-8.) After she declined again, Q.W. offered to walk Ms. Doe to her first-period gym class across campus, and she agreed because her friends had left already. (J.A. 652 at 29:5-20; J.A. 488-490 at 54:25-56:25; J.A. 2389.) Q.W. kept pressuring Ms. Doe to skip school. (J.A. 491 at 57:6-9.) SRO Leak saw them walking and called out when they were close by. (*Id*. at 6-14; J.A. 2213 at 7:13-8:7; J.A. 2212-2213 at 5:14-6:11; J.A. 1443 at 599:17-25: J.A. 2375.)

Q.W. responded immediately by physically forcing Ms. Doe into the MPHS woods while threatening her not to "make a scene." (J.A. 491 at 57:6-14; J.A. 653 at 64:10-65:15; J.A. 2212-2213 at 5:14-6:25; J.A. 1443-1447 at 599:17-603:21; J.A. 1893.) ████████████████████████████████████████
████████████████████████████████████████ Despite relying on this footage in their investigations, Defendant-Appellants did not preserve it.[6] (*Id*.; J.A. 2373-2374; J.A. 3283-3291 at 247:19-251:13 & 273:2-275:24; J.A. 3205 ████████
████████████████████████████████████████
████████████████████████████ In the woods, Ms. Doe told Q.W. *again* that she did not want to skip school (J.A. 653 at 18-22) and started texting classmates and her mother to get help from the police and SRO Leak (J.A. 1881-

---

[6] Board only produced two video clips, one before the kidnapping (J.A. 2389) and one after the oral rape (J.A. 2390); neither show Ms. Doe leaving campus with Q.W., as the CMPD alleged. (J.A. 3084) and Leak (J.A. 3200).

1897; J.A. 1971-1975; J.A. 653-654 at 64:15-65:15.) Classmate J.D. reported the kidnapping to Leak, as did Ms. Doe's father. (J.A. 2375; J.A. 366-367 at 209:11-210:5.)

Leak testified that J.D. reported Ms. Doe's kidnapping to him as SRO. (J.A. 366-367 at 209:11-210:5; *see also* J.A. 2375.) He also testified that his law enforcement training required him to "immediately" call for backup during a crime in progress. (J.A. 207-209 at 20:25-22:22.) However, he did not alert the CMPD to this kidnapping in progress. (J.A. 394-395 at 237:17-23814.) During his deposition, when confronted with his failure to call for backup, Leak reversed his testimony to deny J.D.'s kidnapping report. (J.A. 2375; J.A. 369 at 212:5-21.) Leak testified: "I had no idea that [Jane Doe] had been forced off campus," but J.D.'s audio recording shows she told Leak that Q.W. "took" Ms. Doe off campus. (J.A. 383 at 226:6-14; J.A. 1983 (referencing J.A. 2388).) J.D. informed Ms. Doe by text that Leak and Perkins did not believe her, causing Ms. Doe further distress. (J.A. 1893-1900.)

By 7:31 a.m., Ms. Doe identified her location as Hassell Street. (J.A. 1898.)

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ (J.A. 2815-2816 at 6:22-7:19.) Despite the obvious risk to her safety, instead of calling the CMPD for backup, Leak got Perkins then walked to his patrol vehicle to conduct the search himself. (J.A. 2816 at 7:5-19; J.A. 207-209 at 20:25-

22:22.)  Leak had not located Ms. Doe by 7:57 a.m., which is when Ms. Doe told her mother that Q.W. had "attacked" her.  (J.A. 1976.). During this sexual assault, Q.W. forcibly grabbed Ms. Doe by the hair to orally rape the minor, causing physical injury to her throat.  (J.A. 2214 at 10:7-12:5; J.A. 1469 at 625:18-629:14; J.A. 1961-1962; J.A. 1332-1336 at 488:18-492:25.)

Leak and Perkins found Ms. Doe *covered in semen* with disheveled hair, muddy shoes, and broken eyeglasses.  (J.A. 2214 at 10:7-12:5; J.A. 2520 at 157:7-12; J.A. 654-656 at 65:8-66:20 & 77:6-25; J.A. 675-676 at 71:1-72:4; J.A. 2167-2174; J.A. 1473-1474 at 629:17-630:17; J.A. 1956-1959; J.A. 661-663 at 76:10-78:23; J.A. 3205-3206.)  In Leak's patrol vehicle, Ms. Doe sent a group message to her friends, which read: "I was attacked. I feel so gross. If I have aids ima kill myself [sic]." (J.A. 1904.) ████████████████████████████████████████ ████████████████████████████████ (J.A. 2800-2802 at 6:19-8:9.)  However, Perkins excluded this information during his initial report to the Board: ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████[7] (J.A. 3203-3204.)  Perkins also excluded it from his final report to Board.  (J.A. 2373-2374.)  Based on this report,

---

[7] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████

Board allowed Perkins to change the sexual offense in its MPHS records to indicate a finding of "mutual sexual contact." (J.A. 2363; J.A. 3202).

Ms. Doe also disclosed the "attack" to Leak. (J.A. 496- 498 at 82:2-84:25.) However, in his "non-criminal" incident report, ███████████████████

████████████████████████████████████████████████████████████████

█████. (J.A. 407-410 at 250:14-253:23; J.A. 2461.) When Leak took Ms. Doe back to meet her father at MPHS's campus, he made the minor affirm the sexual assault report under threat of penalty against making a false report, and she affirmed. (J.A. 499 at 85:19-25; J.A. 615 at 86:1-10; J.A. 671-672 at 66:6-68:23.) Ms. Doe's parents then took her to the hospital, where she received a rape kit that preserved her semen-soaked sweater. (J.A. 677 at 74:12-22; J.A. 1960-1970; J.A. 1956-1959.) During this time, Leak took the extraordinary step of trying to discourage the Doe parents from getting this rape kit. (J.A. 664-668 at 162:7-166:14.) Leak published a public narrative to his "non-criminal" incident report that misleadingly said he witnessed Ms. Doe "skipping class" with Q.W. (J.A. 2460.) ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ (J.A. 2461-2462; *see also* J.A. 2863:1-10; J.A. 3031 at 8:4-15; J.A. 3017 at 24:5-13; J.A. 2741-2742 at 3:19-4:4.) ██████████████████

█████████████████████████████████████████████████ (J.A. 3078.)

██████████████████████████████████████████████████████

███████████████████████████████████. (J.A. 2461; J.A. 2814 at 5:7-22; *but see* J.A. 2375; J.A. 366-367 at 209:11-210:5.) ████████████████

██████████████████████████████████████████████████████

██████████████████ (J.A. 3200), which contradicts what he told MPHS, which is that Ms. Doe had only "turned around and *headed back towards MPHS campus*." (J.A. 2375.) ████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████. (J.A. 3074-3075 at 9:18-10:16.) ████████

██████████████████████████████████████████████████████

████████████████████████████. (J.A. 3076-3077 at 11:5-12:6.) Perkins likewise told Board in his final report that Ms. Doe's "clothes were not dirty, and her hair was not out of place." (J.A. 2373.) Ms. Doe never received justice for the kidnapping and oral rape.

### *Procedural History*

Ms. Doe filed this action on November 1, 2018 (J.A. 001) and amended her complaint on December 20, 2018 (J.A. 002), alleging: Count I (Pre- and Post-Report Title IX claims against Board); Count II (42 U.S.C. § 1983 Equal Protection claims against Leak, Perkins, and Board); Count III (§ 1983 Failure to Train claims against Board, City, and Putney); Counts IV & V (Negligence and Negligent Infliction of

Emotional Distress (NEID) claims against Leak and Perkins); Count VI (Negligent Employment claims against City); and Count VII (Common Law Obstruction of Justice claims against Leak and Perkins) (J.A. 063-81).

On January 15, 2019, Board moved to dismiss Counts I and Count II, and Perkins moved to dismiss Count II.  (J.A. 003.)  On June 5, 2019, the Magistrate issued a memorandum and recommendation (M&R) denying dismissal of Count I and granting dismissal for Count II against Board and Perkins in his official but not his personal capacity.  (J.A. 004; Dist. Ct. Doc. #39.)  On August 6, 2019, the District Court accepted the M&R, but erroneously dismissed Count III against Perkins rather than Board as well as wrongly ordered the case closed.  (J.A. 004; J.A. 182-184.)  The District Court corrected the former error on August 7, 2019 (J.A. 185-187), and the latter error on July 26, 2023 (J.A. 037; J.A.188).  On February 20, 2020, City moved to dismiss Counts III and VI.  (J.A. 005.)  On May 29, 2020, the Magistrate issued an M&R denying dismissal of Count VI and granting dismissal on Count III. (J.A. 005; Dist. Ct. Doc. #57.)  On July 6, 2020, the District Court accepted the M&R to dismiss Count III against City, but not Count VI.  (J.A. 005; J.A. 189-191.)

On October 26, 2020, Defendant-Appellees moved for summary judgment (J.A. 006-007; J.A. 192-194; J.A. 579-581: J.A. 594-596), and Ms. Doe opposed these motions on December 9, 2020 (J.A. 008-009; Dist. Ct. Docs. #81-83).  Prior to any summary judgment ruling, on August 2, 2021, Ms. Doe moved under Rule

56(d) to reopen discovery because Defendant-Appellees had withheld evidence of prior sexual assaults handled by Leak at MHPHS. (J.A. 010; Dist. Ct. Doc. #92.[8]) Ms. Doe realized this discovery misconduct after related media coverage and receiving declarations related to a prior MPHS victim, S.B. (*Id*.; J.A. 3207-3213.) On November 23, 2021, the Magistrate's M&R recommended reopening discovery and supplemental summary judgment filings for all parties. (J.A. 011; J.A. 703-708.) On December 10, 2021, Defendant-Appellees challenged the M&R (J.A. 011-012), which the District Court affirmed on January 6, 2022 (J.A. 014; J.A. 709-713). In the interim, Defendant-Appellees failed to comply with court-ordered discovery, so Ms. Doe moved to compel on December 30, 2021 (J.A. 013), and the Magistrate granted this motion on January 27, 2022. (J.A. 015.)

On March 7, 2022, all parties supplemented their summary judgment filings. (J.A. 016.) Even though the entire purpose of this supplemental filing was to remedy discovery misconduct, Board and City only produced highly relevant records, such as Leak's report on S.B.'s campus rape (J.A. 2194-2207), *after* this filing deadline, causing Ms. Doe to move for sanctions on May 11 and 24, 2022 (J.A. 018-019; Dist. Ct. Docs. #170 & 177). On June 28, 2022, the Magistrate's M&R recommended sanctions of striking Board and City's summary judgment motion and awarding Ms. Doe associated attorneys' fees and costs. (J.A. 021; J.A. 768-772.) On July 12,

---

[8] Dist. Ct. Doc. #92, 92–1.

2022, Board and City challenged this M&R. (J.A. 021.) On August 12, 2022, the District Court largely affirmed the M&R but reduced the sanctions. (J.A. 021-022; J.A. 773-807.)[9] Through that same order, the District Court also granted summary judgment to Leak and Perkins on Counts II, IV, V, and VII but denied summary judgment for Board and City on Counts I and VI, respectively. (*Id.*)

On January 3, 2023, the parties filed over two dozen motions *in limine*. (J.A. 025-028.) Relevant to this appeal, Ms. Doe filed a motion seeking pre-admission of Leak's IA history (J.A. 026; Dist. Ct. Doc. #243) and a motion seeking a spoliation inference against Defendant-Appellees. (J.A. 028; Dist. Ct. Doc. #258). On January 11, 2023, the District Court issued a single order containing numerous rulings without much if any reasoning, including those denying Ms. Doe's two motions. (J.A. 031; J.A. 833-838.) The jury trial began on January 17, 2023. (J.A. 031.) Despite having denied City summary judgment months earlier (J.A. 804-807), without Leak's IA history available as evidence at trial, the Court orally granted City's Rule 50 judgment on Count VI on January 19, 2023.[10] (J.A. 032-033; J.A. 1594-1599 at 750:1-755:25.) On January 20, 2023, without the benefit of a spoliation inference, the jury found for Ms. Doe on all Title IX elements *except* for deliberate indifference (J.A. 2376-2378), so the Clerk dismissed Count I (J.A. 033).

---

[9] The parties worked to resolve the attorneys' fees and costs amongst themselves by October 21, 2023. (J.A. 024, 808-809.)

[10] The Court issued a written order on January 30, 2023. (J.A. 035; J.A. 2379-2384.)

On February 16, 2023, Ms. Doe timely filed her notice of appeal. (J.A. 037; J.A. 2385-2387.) On June 21, 2023, Ms. Doe moved the Fourth Circuit and District Court for correction of the August 7, 2019 Order to ensure entry of a final judgment (Doc. #27; J.A. 037). On July 11, 2023, the Fourth Circuit so ordered (Doc. #30-1), and the District Court issued the correction on July 26, 2023. (J.A. 037; J.A. 188.)

# SUMMARY OF ARGUMENT

Leak and Perkins are not entitled to summary judgment on Counts II, IV, V, and VII because Ms. Doe raised genuine disputes of material fact regarding their bad faith and unreasonable conduct of misleading officials about her physical appearance and sexual assault reports after the peer-perpetrated kidnapping and oral rape. Such factual disputes preclude the immunity defenses raised by Leak and Perkins because a jury must make credibility determinations and may reasonably choose to believe Ms. Doe over Leak and Perkins to find that they obstructed justice.[11]

Without any analysis in support, the District Court arbitrarily denied Ms. Doe's motion *in limine* seeking admission of Leak's IA history, which shows City had notice of his unfitness to serve as an SRO. The District Court then granted City's Rule 50 motion on the notice element of Count VI to dismiss the claim. Likewise, without any reasoning, the District Court denied Ms. Doe's request for an adverse inference against Defendant-Appellees for their spoliation of investigative records, including footage of the incident from MPHS, which she needed to prove Board's deliberate indifference under Count I and Leak's negligence under Count VI. Ms. Doe seeks a new jury trial to remedy these arbitrary rulings that negatively affected her substantial rights to a fair trial.

---

[11] Indeed, the jury believed Ms. Doe's account of the kidnapping and oral rape based on its verdict form regarding Count I. (J.A. 2376-2378.)

Finally, the District Court abused its discretion by reducing the Magistrate Judge's sanction recommendations for around two years of discovery abuses by Defendant-Appellees that effectively *doubled* Ms. Doe's litigation time and expenses. The District Court did not have lawful grounds to reconsider the sanctions recommendations, so this Court should reinstate the original Rule 37 sanctions recommended to ensure Ms. Doe has a full remedy to these abuses.

# ARGUMENT

## I. The District Court erred in granting summary judgment to Defendant-Appellees Leak and Perkins because Plaintiff-Appellant raised genuine disputes of material fact precluding summary judgment.

The District Court improperly granted Leak and Perkins summary judgment by resolving factual disputes and credibility issues in their favor as movants. The Fourth Circuit reviews summary judgment rulings *de novo*. *See* <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778 (4th Cir. 1993) (*citing* <u>Higgins v. E.I. DuPont de Nemours & Co.</u>, 863 F.2d 1162, 1167 (4th Cir. 1988)). Summary judgment is only appropriate when there is "no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Substantive law governs material facts, and genuine disputes are those that "create fair doubt." <u>Drewitt</u>, 999 F.2d at 778 (citations omitted). A party is only entitled to "judgment as a matter of law" when the nonmovant fails to "make a sufficient showing on an essential element of her case." <u>Ballengee v. CBS Broadcasting, Inc.</u>, 986 F.3d 344, 349 (4th Cir. 2020) (*citing* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). For summary judgment, district courts "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," which was Ms. Doe in this case. <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995) (*quoting* <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986) (*quoting* <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962))). "The

court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See* <u>Russell,</u> 65 F.3d at 1239 (internal quotation marks omitted) (*citing* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) ("[T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but *whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented*") (emphasis added); <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979) (finding summary judgment inappropriate when "conflicting versions of the facts . . . require credibility determinations"). In this case, the District Court improperly granted Leak and Perkins' immunity defenses on Counts II, IV, and V, and it resolved factual disputes in their favor on Count VII.

Count II (§ 1983 Equal Protection) prohibits state officials from depriving a person of their Constitutional or federal rights. *See* <u>Cooper v. Sheehan</u>, 735 F.3d 153, 158 (4th Cir. 2013) (citing 42 U.S.C. § 1983). Count IV (Negligence) prohibits negligent conduct, while Count VII (NEID) prohibits such conduct when reasonably foreseeable that it would cause "severe emotional distress" and, in fact, does so. *See* <u>Shaw v. Stroud</u>, 13 F.3d 791, 803 (4th Cir. 1994) (*citing* <u>Johnson v. Ruark Obstetrics</u>, 395 S.E.2d 85, *reh'g denied*, 399 S.E.2d 133 (N.C. 1990)). Finally, Count VII (Common-Law Obstruction of Justice) broadly covers "any act [or attempt] which prevents, obstructs, impedes, or hinders public or legal justice."

Houck v. Howell, 2016 WL 1599806, *8 (W.D.N.C. Apr. 21, 2016) (citing cases).

Such a claim is particularly inappropriate for summary judgment, as it is "very fact-specific and context-driven." *Id.* at *8; Blackburn v. Carbone, 703 S.E.2d 788, 795 (N.C. Ct. App. 2010) ("The common law offense of obstructing public justice may take a variety of forms") (*quoting* In re Kivett, 209 S.E.2d 442, 462 (N.C. 1983) (internal citation omitted)). North Carolina courts find such claims when defendants destroy or fabricate evidence. *See, e.g.,* Blackburn, 703 S.E.2d at 795 (citing cases); *see also* Houck, 2016 WL 1599806 at *9 (finding that false statements by officials "would seem to fall within North Carolina's obstruction of justice statute and would seemingly support the Plaintiff's claim.").[12] On each count, the District Court wrongly resolved factual disputes in favor of Leak and Perkins.

### a. Leak and Perkins obstructed Ms. Doe's ability to obtain legal justice by withholding evidence and misleading officials.

To oppose summary judgment motions filed by Leak and Perkins, Ms. Doe raised genuine disputes of several material facts regarding Counts II, IV, V, and VII.

---

[12] The district court still dismissed the claims against the defendant police officers based on Evans v. Chalmers, 703 F.3d 646 (4th Cir. 2012). *See* Houck, 2016 WL 1599806 at *9–10. However, Evans is distinguishable from this case because Leak was serving as an SRO, which North Carolina courts recognize as an agent of the school, ensuring student safety, security, and discipline. *See, e.g.,* In re S.W., 614 S.E.2d 424, 426–27 (N.C. Ct. App. 2005) (*quoting* In re D.D., 554 S.E.2d 346, 352, *appeal dismissed and disc. review denied*, 354 N.C. 572 (2001) (*citing* N.J. v. T.L.O., 469 U.S. 325 (1985)); Smith v. Jackson City Bd. of Educ., 608 S.E.2d 399, 411 (N.C. App. 2005) (*citing* same).

For example, after the kidnapping and oral rape, Leak and Perkins found Ms. Doe with disheveled hair, muddy shoes, broken eyeglasses, and her blue sweater covered in semen. (J.A. 2214 at 10:7-12:5; J.A. 2520 at 157:7-12; J.A. 654-656 at 65:8-66:20 & 77:6-25; J.A. 675-676 at 71:1-72:4; J.A. 2167-2174; J.A. 1473-1474 at 629:17-630:17; J.A. 1956-1959; J.A. 661-663 at 76:10-78:23; J.A. 3205-3206.) Despite this evidence of a sex crime, Leak filed a "non-criminal" incident report that

████████████████████████████████████████████████████████████████

████████████████ (J.A. 2461.) ████████████████████████████████████

██████████████████████████████████████████

              ██████████████████████████████████████████████
              ██████████████████████████████████████████████
              ██████████████████████████████████████████████
              ████████████████████████████

(J.A. 3074-3075 at 9:18-10:16.) ████████████████████████████████████

████████████████████████████████ (J.A. 3076-3077 at 11:5-12:6; J.A. 407-410 at 250:14-253:23.)  Ms. Doe also demonstrated to the District Court that Leak had a history of dishonesty with IA. (J.A. 2414-2417 at 75:1-78:6; J.A. 3198.) ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.*)  While Leak received J.D.'s report that Ms. Doe had been kidnapped (J.A. 366-367 at 209:11-210:5; J.A. 2375; J.A. 2388), ██████████████████████████████████ (J.A. 2461) ████████

20

████████████ (J.A. 2814 at 5:7-22). Similarly, Perkins withheld information about Ms. Doe's appearance by falsely reporting to Board that her "clothes were not dirty, and her hair was not out of place." (J.A. 2373.) ████████████████

████████████████████████████████████████ (J.A. 3205.) Perkins then "investigated" and decided the incident to be "mutual sexual contact," not a sexual assault. (J.A. 2363; J.A. 3202.)

Beyond her appearance, Leak and Perkins also hid Ms. Doe's prompt reports of a sexual attack. Specifically, in his initial email to Board about the incident (J.A. 3203-3204) and in his final report to Board (J.A. 2373-2374), Perkins omitted the fact that he had received Ms. Doe's report of a sexual "attack" after locating her with Q.W. outside the bamboo forest. (J.A. 1904; J.A. 2800-2802 at 6:19-8:9.) ████████

████████████████████████████████████████████████

████████████████████████████████████████ (J.A. 3205-3206.) ████████████████████████████████████████

████████████████████████████████. (J.A. 2800-2802 at 6:19-8:9; J.A. 1904.) Ms. Doe also promptly reported to SRO Leak that Q.W. "attacked" her and pointed to his semen on her sweater, indicating the sexual nature of the offense. (J.A. 496- 498 at 82:2-84:25; J.A. 1956-1959.) Shortly thereafter, Leak threatened the minor against making a false report and Ms. Doe affirmed the allegations against Q.W. undeterred and in front of her father. (J.A. 499 at 85:19-25; J.A. 615 at 86:1-

10; J.A. 671-672 at 66:6-68:23.) However, when Leak filed a "non-criminal" incident report, ██████████████████████████████████████████████████

██████████████████████████████████████████ (J.A. 2461-2462.) ████████

██████████████████████████████████████████████████████████████

(*id.*; *but see* J.A. 2214 at 10:7-12:5; J.A. 1469 at 625:18-629:14; J.A. 1961-1962; J.A. 1332-1336 at 488:18-492:25), ████████████████████████████████████

████████████████████████████████████ (J.A. 2863:1-10; J.A. 3031 at 8:4-15; J.A. 3017 at 24:5-13; J.A. 2741-2742 at 3:19-4:4).[13] Leak also called the Doe parents to discourage them from getting a rape kit for Ms. Doe. (J.A. 677 at 74:12-22; J.A. 1960-1970; J.A. 1956-1959.) ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████ (J.A. 3076-3077 at 11:5-12:6.)

Ignoring all these facts and without drawing any inferences from them in Ms. Doe's favor, the District Court wrongly resolved these factual disputes in favor of Leak and Perkins. (J.A 795-804.) Specifically, the District Court summarized Ms. Doe's disputes as: "Leak submitted reports to CMPD omitting the sexual assault to cover up his wrongdoing" and then it proceeded to improperly weigh the evidence and make credibility determinations in Leak's favor, concluding that he had simply

---

[13] Leak used this same tactic to minimize and wrongfully dismiss S.B.'s sexual assault report as a non-criminal incident (J.A. 2194-2207) counter to her report of a forcible rape (J.A. 931-933 at 87:22-89:21).

"submitted the reports based on his understanding of the events." (J.A. 800.) However, this runs afoul of Fourth Circuit precedent in <u>Doe v. Fairfax County School Board</u>, which applies an objective standard for establishing when schools receive notice of a student-on-student sexual assault. 1 F.4th 257, 263 (4th Cir. 2021). This Court specifically rejected the standard applied here by the District Court, which is based on "whether school officials *subjectively* understood the report to allege sexual harassment or whether they *believed* the alleged harassment occurred." (*Id*. (emphasis added).) Worse still, the District Court falsely claimed Ms. Doe raised "no evidence to support" her contention that "Perkins submitted reports omitting information to cover up his own liability." (J.A. 800.) To the contrary, as recounted *supra*, Ms. Doe raised several genuine disputes of material facts precluding summary judgment, so this Court should reverse summary judgment and allow this action to proceed to a jury trial against Leak and Perkins.

### b. Leak and Perkins' bad faith conduct precludes their ability to claim public official immunity on Counts IV and V.

Leak and Perkins are not entitled to public official immunity because a reasonable jury could find that they acted in bad faith to mislead officials about Ms. Doe's appearance and sexual assault reports. For Counts IV and V, public official immunity does not apply if an official is "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." <u>Smith</u>, 608 S.E.2d at 411 (citations omitted) (finding an official's concealment of a

known campus safety risk sufficient "willful, wanton, and reckless disregard" to deny public official immunity); McMillan v. Cumberland Cty. Bd. of Educ., 734 Fed. Appx. 836, 842 (4th Cir. 2018) (*quoting* Smith v. Hefner, 68 S.E. 2d 783, 787 (N.C. 1952) (citing cases)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another," which in this case is Ms. Doe. McMillan, 734 Fed. Appx. at 842 (*quoting* Grad v. Kaasa, 321 S.E.2d 888, 890 (N.C. 1984) (citation omitted)). Courts may not presume a public official's good faith when there is evidence to the contrary, as here. *Cf.* McMillan, 734 Fed. Appx. at 842 (citation omitted). Based on the factual disputes recounted above, which raise questions about their bad faith conduct, the District Court's grant of public official immunity to Leak and Perkins on Counts IV and V was inappropriate.

### c. The District Court should have applied the general constitutional rule to deny Leak and Perkins qualified immunity.

Leak and Perkins are also not entitled to qualified immunity because no reasonable official would have withheld information about Ms. Doe's appearance and sexual assault reports during active criminal and campus investigations. For Count II, state officials are not shielded by qualified immunity when they have "(1) . . . violated a statutory or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct." Mays v. Sprinkle, 992 F.3d 295, 301 (4th Cir. 2021) (*quoting* Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (*citing*

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citation omitted)). In the absence of a "case directly on point," the U.S. Supreme Court has still found § 1983 violations when "every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (*per curiam*) (*quoting* Reichle v. Howards, 566 U.S. 658, 664 (2012) (*quoting* Ashcroft, 563 U.S. at 741 (*quoting* Anderson v. Creighton, 483 U.S. 635, 640 (1987) (*citing* Malley v. Brigg, 475 U.S. 335, 344–45 (1986))))). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." U.S. v. Lanier, 520 U.S. 259, 271 (1997); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that, when there is no case on point, a "general constitutional rule . . . may apply with obvious clarity to the specific conduct in question"); *see also* Taylor v. Riojas, 141 S. Ct. 52, 54 (2020) (*per curiam*) (reversing qualified immunity due to the lack of any case on point because no reasonable officer would have concluded "it was constitutionally permissible" to keep an inmate in "deplorably unsanitary conditions"). "Qualified immunity turns on whether any reasonable official in the defendant's shoes would have understood that he was violating" the law. Mays, 992 F.3d at 302 (citation omitted). Relevant to this case, the Fourth Circuit has previously found that officials intentionally withholding or destroying evidence violate the Constitution. *See, e.g.,* Gilliam v.

<u>Sealey</u>, 932 F.3d 216, 241 (4th Cir. 2019) (*citing* <u>Jean v. Collins</u>, 221 F.3d 656, 663 (4th Cir. 2000) (*per curiam*) as holding that police violate due process when they "intentionally withhold or destroy evidence, or otherwise act in bad faith.") The District Court should have found Leak and Perkins did not act as reasonable state officials when they withheld information about Ms. Doe's appearance and sexual assault reports to obstruct the minor victim's ability to obtain legal justice.

## II. The District Court's erroneous rulings on Plaintiff-Appellant's motions *in limine* resulted in a Rule 50 judgment for City and a jury verdict for Board, which this Court should reverse.

By denying two motions *in limine* without reasoning, the District Court impeded Ms. Doe's ability to prove her claims against City and Board at trial. The Fourth Circuit reviews such rulings for abuse of discretion. *See* <u>U.S. v. Hernandez</u>, 212 Fed. Appx. 229, 230 (4th Cir. 2007) (*citing* <u>U.S. v. White</u>, 405 F.3d 208, 212 (4th Cir.), *cert denied*, 435 U.S. 1023 (2005) (citation omitted)). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, . . . or commits an error of law." <u>Pugh v. Louisville Ladder, Inc.</u>, 361 Fed. Appx. 448, 451 (4th Cir. 2010) (*quoting* <u>U.S. v. Delfino</u>, 510 F.3d 468, 470 (4th Cir. 2007) (citation omitted)); <u>U.S. v. Chisholm</u>, 652 Fed. Appx. 196, 198 (4th Cir. 2016) (reviewing "whether the district court's exercise of discretion, considering the law and the facts, was arbitrary or capricious") (citation omitted)). The Fourth Circuit reverses erroneous rulings

that "affect a party's substantial rights," such as those resulting in a judgment, as here. *Cf.* <u>Dorman v. Annapolis OB-GYN Assocs., P.A.</u>, 781 Fed. Appx. 136, 142 (4th Cir. 2019) (citing cases). In <u>Moore v. Equitrans, L.P.</u>, this Court found a district court had errored in such a ruling when it did not address the parties' motion *in limine* arguments to instead decide on unaddressed grounds of waiver. 27 F.4th 211, 225 (4th Cir. 2022); *see also* <u>U.S. v. Graves</u>, 551 Fed. Appx. 680, 688 (4th Cir. 2014) (finding no error where a district court provided reasoning in support). By failing to provide any reasoning for denying Ms. Doe's two motions *in limine*, this Court should find the District Court acted arbitrarily, abusing its discretion.

**a. The District Court should reverse both the motion *in limine* ruling denying Ms. Doe's admission of direct evidence regarding City's negligent employment of Leak as SRO and Rule 50 judgment.**

The District Court arbitrarily denied Ms. Doe's motion *in limine* seeking admission of Leak's IA history, which was essential to proving Count VI. In denying this motion, the District Court ruled in full: "Plaintiff's request is DENIED. Defendant's request is GRANTED. Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 403." (J.A 834.) Rule 402 prohibits evidence that is not relevant, and Rule 401 defines relevance as "*any* tendency to make a fact more or less probable than it would without the evidence" when "of consequence to determining the action" (emphasis added). Rule 403 requires a court to "determin[e] whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice,

misleading the jury, or confusion of the issues." Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 349 (4th Cir. 2014) (citation omitted); U.S. v. Miller, 61 F.4th 426, 429 (4th Cir. 2023) (finding Rule 403 as "a rule of inclusion" favoring admissibility, so probative evidence should be "excluded only sparingly") (citations omitted). The Fourth Circuit reverses Rule 403 rulings that are "arbitrary or irrational exercise[s] of discretion." Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir. 1987) (*citing* U.S. v. Penello, 668 F.2d 789, 790 (4th Cir. 1982) (citation omitted)); Miller, 61 F.4th at 429 (allowing admission of evidence prejudicial to the defense when relevant to prove a specific element of the offense) (citing cases). Under Rule 403, district courts "should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 564 Fed. Appx. 710, 715 (4th Cir.), *cert. denied*, 574 U.S. 987 (2014) (citation omitted); Chisholm, 652 Fed. Appx. at 198 (reviewing Rule 403 "evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect") (*quoting* Minter, 762 F.3d at 350 (citation omitted)). This Court should find the District Court's ruling was arbitrary due to its lack of reasoning in support of denying Ms. Doe's motion *in limine*.

The District Court failed to provide Ms. Doe with any reasoning for its ruling to exclude Leak's IA history to affect her substantial rights. (J.A. 834.) At trial, Ms. Doe bore the burden of proof to show that City had actual or constructive notice

of Leak's incompetence or inherent unfitness to serve as an SRO for Count VI. *See* Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F.Supp.3d 544, 556 (M.D.N.C. 2016) (requiring plaintiff to "prove: (1) the specific negligent act on which the claim is founded; (2) incompetence, by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight or supervision; and (4) that the injury complained of resulted from the incompetency proved.") Without Leak's IA history, which is direct evidence of the notice requirement under Count VI (J.A. 3194-3199), the District Court left Ms. Doe unable to bear the burden of proof at trial and then granted a Rule 50 judgment against her at trial. (J.A. 1594-1599 at 750:1-755:25; J.A. 2379-2384.) Importantly, North Carolina precedent requires employers to be "reasonably diligent" when assigning an employee to oversee minors. *See generally* Lamb v. Littman, 38 S.E. 911 (N.C. 1901) (finding an employee skilled but the employer negligent for allowing him to supervise children given his known bad character towards them). In this case, in breach of its duty of care, City responded to notice of Leak's bad character by assigning him to serve as an SRO over minor children. (J.A. 3194-3199; J.A. 3194-3197; J.A. 230 at 53:11-20; J.A. 230 at 53:11-54:24; J.A. 230-232 at 53:25-55:19; J.A. 251-254 at 94:24-97:16.) Specifically, Ms. Doe showed that:



- ████████████████████████████████
████████████████████████████████
███████████████████████

████████████████████████████████
████████████████████████████████
█████████████████████

████████████████████████████████
████████████████████████████████
███████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████ (J.A. 3194-3199; J.A. 3194-3197; J.A. 230 at 53:11-20; J.A.

230 at 53:11-54:24; J.A. 230-232 at 53:25-55:19; J.A. 251-254 at 94:24-97:16.) In

the SRO role, Leak demonstrated further unfitness and incompetence by repeatedly

mishandling intimate partner violence reports from MPHS students S.B. (J.A. 2194-

2207; J.A. 931-933 at 87:22-89:21; J.A. 3207-3213), Jill Roe (J.A. 3276-3279; J.A.

3277-3279 at 4:4-6:24; J.A. 3280-3282), and Ms. Doe, as argued herein. Without

his IA history, Ms. Doe could not prove City's notice of Leak's unfitness, resulting

in the District Court granting a Rule 50 judgment by finding: "Doe fail[ed] to meet

her burden of showing that City had constructive notice" of Leak's unfitness or

incompetence to serve as SRO."[14]  (J.A. 2379-2384; J.A. 1594-1599 at 750:1-

---

[14] Notably, this Court reviews Rule 50(a) motions *de novo* using the standard of whether a reasonable jury could reach in favor of the movant after considering evidence in the light most favorable to the nonmovant. *See* <u>Caraway v. City of</u>

755:25.)  This Court should find the exclusion of Leak's IA history at trial to be arbitrary and to have impeded Ms. Doe's substantial rights, which that it should remand Count VI to a new jury trial.

> **b. Without any reasoning, the District Court denied Ms. Doe a spoliation inference, impeding her ability to prove Count I against Board and Count VI against City at trial.**

The Fourth Circuit should reverse the District Court's arbitrary denial of Ms. Doe's request for a spoliation inference against Defendant-Appellees.  The Fourth Circuit reviews such rulings under an abuse of discretion standard.  *See, e.g.*, Wall v. Rasnick, 42 F.4th 214, 217 (4th Cir. 2022) (*citing* Turner v. U.S., 736 F.3d 274, 282 (4th Cir. 2013) (*citing* Cole v. Keller Indus., Inc., 132 F.3d 1044, 1046–47 (4th Cir. 1998))).  Spoliation is "the destruction or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 515–16 (D. Md. 2010) (*quoting* Silvestri v. Gen. Motors Corp., 271 F.3d 582, 590 (4th Cir. 2001) (citation omitted)).  The duty to preserve attaches "when a party reasonably should know that the evidence may be relevant." Turner, 736 F.3d at 282 (*quoting* Silvestri, 271 F.3d at 591) (citation omitted); Victor Stanley, Inc., 269 F.R.D. at 521 ("A formal discovery request is not necessary to trigger the duty to preserve evidence.")

---

Elizabeth City, N.C., 854 Fed. Appx. 472, 472 (4th Cir. 2021) (*per curiam*) (internal citations omitted).

(Citation omitted). "Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence." <u>Vodusek v. Bayliner Marine Corp.</u>, 71 F.3d 148, 155 (4th Cir. 1995). An adverse inference requires a showing that "the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." <u>Vodusek</u>, 71 F.3d at 156 (declining to require a showing of "bad faith") (citation omitted). Spoliation inferences should be granted to "serve the twin purposes of 'leveling the evidentiary playing field and . . . sanctioning the improper conduct.'" <u>King v. Am. Power Conversion Corp.</u>, 181 Fed. Appx. 373 (4th Cir. 2006) (<i>citing</i> <u>Vodusek</u>, 71 F.3d at 156). Here, without any reasoning, the District Court abused its discretion by denying Ms. Doe's requested spoliation inference against Defendant-Appellees.

Without a spoliation inference against them at trial, Defendant-Appellees wrongfully benefitted from their collective failure to preserve MPHS's security camera footage from the incident. (J.A. 3283-3291 at 273:2-275:24.) Ms. Doe required this adverse inference to help prove Board's deliberate indifference under Count I and Leak's negligence under Count VI. (J.A 063-066; J.A. 077-079.) Of note, Defendant-Appellees cited to the MPHS footage during their criminal and campus investigations, alleging it undermined Ms. Doe's reports of a peer-perpetrated kidnapping and oral rape. (J.A. 3084; J.A. 2373-2374; J.A. 3283-3291 at 247:19-251:13 & 273:2-275:24; J.A. 3205.) However, the record shows this

footage could have confirmed that Q.W. had forced Ms. Doe off campus and shown whether Leak could have intervened (J.A. 3084; J.A. 3205), which made it essential evidence to Ms. Doe's claim (J.A. 063-81).  Specifically, the record shows:

- 

- Perkins again excluded Ms. Doe's report of an "attack" in his final report to Board, which cited his review of several MPHS footage clips about Ms. Doe's interaction with Q.W., among other things.  (J.A. 2373-2374.)

- Board then allowed Perkins to decide the incident was one of "mutual sexual contact," not sexual assault, based on his report.  (J.A. 2363; J.A. 3202.)

- Perkins then destroyed or failed to preserve his investigative file along with the related footage before Ms. Doe—a then-minor—could bring this action.  (J.A. 3282-3291 at 212:1-20, 247:19-251:13 & 273:2-275:24.)

- Indeed, Perkins *egregiously* failed to preserve the MPHS footage despite an ongoing criminal investigation into the incident.  (*Id*.)

- 

- However, Leak contradict this version of events in a MPHS email (J.A. 2375) and Ms. Doe's account also contradictions Leak's version of events, as she testified consistently that Q.W. immediately pulled her into the woods after Leak called out to them. (J.A. J.A. 491 at 57:6-14; J.A. 653 at 64:10-65:15; J.A. 2212-2213 at 5:14-6:25; J.A. 1443-1447 at 599:17-603:21; J.A. 1893.)

Based on the record, the destroyed MPHS footage supported Ms. Doe's report that Q.W. forced her into the woods; however, Defendant-Appellees failed to preserve this evidence of their liability. (J.A. 3283-3291 at 247:19-251:13 & 273:2-275:24.)

Without this footage, Ms. Doe needed a spoliation inference to help prove Board's deliberate indifference. (J.A. 2376-2378.) Board had demonstrated such indifference by, among other things, allowing a potentially liable (and thus biased) employee like Perkins to conduct a sham investigation that omitted key evidence before finding that no sexual assault had occurred. (J.A. 1904; J.A. 3203-3204; J.A. 2373-2374; J.A. 2363; J.A. 3202.) *See* Fem. Majority Found. v. Hurley, 911 F.3d 674, 690 (4th Cir. 2018) (finding a university's "limited steps" could still constitute Title IX deliberate indifference because it "made no real effort to investigate or end the harassment"). ███████████████████████ ████████████████ relevant to Counts VI, V, and VI. (J.A. 2213 at 7:13-8:7.)

Without her requested spoliation inference, the jury found for Ms. Doe on all elements of Count I except for deliberate indifference.[15] (J.A. 2376-2378.) Ms. Doe

---

[15] The Court also granted City a Rule 50 judgment on Count VI. (J.A. 2379-2384; J.A. 1594-1599 at 750:1-755:25.)

seeks a new trial to remedy the injustice caused by Defendant-Appellees' intentional failure to preserve key evidence of Q.W. kidnapping her from MPHS.

In <u>Wall</u>, this Court found an abuse of discretion where a district court denied a plaintiff's requested spoliation inference against a correctional institution after it seemingly failed to comply with its duty to preserve footage of an incident despite a timely request made within five days of the incident in question. 42 F.4th at 221. In support of its reversal, the Fourth Circuit cited the lack of any fact-finding and reasoning for the court's denial of the spoliation inference. *Id*. Likewise, in this case, the District Court arbitrarily denied Ms. Doe's request for a spoliation inference without any fact-finding in support. (J.A. 834.) Had it done so, it should have noted that Board and City started their respective campus and criminal investigations on the *same day* as the incident (J.A. 3203-3204; J.A. 2453-2464), so there is *no justification* for the failure of Defendant-Appellee not to have preserved the relevant MPHS footage, as they were on notice of Ms. Doe's legal claims. This MPHS footage showed ███████████████████████████████████ ████████████████, which is evidence essential to proving all her claims against Defendant-Appellees. As such, this Court should grant Ms. Doe a new jury trial.

**III. The District Court abused its discretion by reducing the sanctions against Defendant-Appellees City and Board for repeated discovery abuses that prejudiced Plaintiff-Appellant during summary judgment and at trial.**

The District Court abused its discretion by reducing recommended sanctions for City and Board's "egregious non-compliance" with *three* court orders. (J.A. 770.) For such non-compliance, Rule 37(b)(2)(A)(iii) *permits* courts to issue case-based remedies, such as striking a pleading, whereas Rule 37(b)(2)(C) *obligates* courts to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with court orders.[16] The Fourth Circuit reviews Rule 37 sanctions for abuse of discretion. *See* Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 347–48 (4th Cir. 2001) (*per curiam*) (*en banc*) (*citing* Anderson v. Found. for Adv., Educ., & Employ. of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)); Mut. Fed. Savings & Loan Assoc. v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (*citing* Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (*per curiam*). A district court abuses its discretion when it "acts in an arbitrary manner . . . [or] fails to consider judicially recognized factors limiting its discretion." *See* Wall, 42 F.4th at 220 (citations omitted). The District Court did both in this case.

Regarding the latter standard, Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) limited the District Court's ability to reconsider the M&R to only when it was "clearly erroneous or contrary to law." *See* Everett v. Prison Health Servs., 412 Fed. Appx. 604, 605, n. 2 (4th Cir. 2011). The "clearly erroneous" standard

---

[16] In addition to or in the alternative to permissive remedies under Rule 37(b)(2)(A).

means a court cannot reconsider a matter "simply because it is convinced that it would have decided the case differently" because its "function is ***not*** to decide factual issues *de novo*."[17] <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573–74 (1985) (emphasis added) (reviewing a district court's Rule 52(a) ruling) (*citing* <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 123 (1969)); <u>Anderson</u>, 470 U.S. at 574 (holding that when there are "two permissible views of the evidence," a ruling is not "clearly erroneous.")).  On appeal, the Fourth Circuit considers the full record and reverses a ruling upon the "definite and firm conviction . . . [of] a clear error of judgment."   <u>Wilson v. Volkswagen of Am., Inc.</u>, 561 F.2d 494, 506 (4th Cir. 1977) (citations omitted).  Here, the District Court did not have the authority to reconsider the sanction recommendation, as it did not find the Magistrate's M&R to be clearly erroneous or contrary to law.  (J.A. 786-790.)

In the M&R, the Magistrate properly applied the Fourth Circuit's four-part sanction test to these facts (J.A. 770): "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that non-compliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would [be] effective." <u>Belk</u>, 269 F.3d at 348 (citing Rule 37).  The Magistrate found their conduct to be in bad faith and prejudicial, as well as a

---

[17] District courts only have *de novo* review of magistrate M&Rs for dispositive matters.  *See* 28 U.S.C. § 636(b)(1)(B)-(C).

need for deterrence after lesser efforts to ensure compliance. (J.A. 768-772.) As such, the Magistrate recommended striking Board and City's summary judgment motions under Rule 37(b)(2)(A) and "awarding' Plaintiffs [sic] attorney's fees and costs incurred in the preparation of those Motions" under Rule 37(b)(2)(C). (J.A. 771.) *Accord* Nat'l Hockey League, 427 U.S. at 642 (finding that sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."); Anderson, 155 F.3d at 505 (*quoting* Mut. Fed. Savings & Loan Assoc., 872 F.2d at 94 (encouraging the judiciary to send an "unmistakable message" that it "will not tolerate repeated misconduct")). Upon review, the District Court affirmed the finding of bad faith, saying: "This Court is frankly tired of Defendants' gamesmanship in discovery." (J.A. 790.) It also affirmed that Ms. Doe suffered prejudice, noting she was "unable to review and analyze all responsive discovery . . . before important Court deadlines when opposing the summary judgment motions" and that sanctions were a necessary deterrence.[18] (*Id*.) *See* Belk, 269 F.3d at 348 (finding deterrence essential when Board withheld discovery until a few days before trial). The District Court never found that the M&R was "clearly erroneous," nor did it analyze the recommended sanctions under Rule 37(b)(2)(C). (*Id*.) Instead, it

---

[18] Indeed, City and Board have a history of discovery misconduct in other civil rights cases before this same District Court. *See, e.g.,* Summers v. City of Charlotte, 2022 WL 2019963 (W.D.N.C. June 6, 2022) & Belk, 269 F.3d 305.

unjustifiably reconsidered the recommendation by declining to strike Board and City's summary judgment motions and reducing Ms. Doe's attorneys' fees and cost to only those incurred for filing the sanction motions. (*Id*.) *Contra* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). In support, the District Court only asserted that Ms. Doe "effectively oppose[d] . . . motions for summary judgment" (*id*.) despite going on to grant the same to Leak and Perkins in the same Order (J.A. 795-804). In doing so, it failed to consider the impact of City's discovery misconduct on Ms. Doe, who was left without essential evidence of Leak's systemic mishandling of woods-based MPHS sexual assaults during supplemental summary judgment (Dist. Ct. Doc. #177-1 at 3), such as his "non-criminal" incident report falsifying S.B.'s report of a campus rape (J.A. 2194-2207). This Court should find that the District Court abused its discretion by reconsidering and arbitrarily reducing the recommended sanctions without proper consideration of Rule 37(b)(2)(C).

Of note, Ms. Doe initiated this action in 2018 and filed her summary judgment oppositions in early 2020. (J.A. 001-008.) From 2020 to 2022, Ms. Doe pursued discovery abuses and engaged in supplemental summary judgment. (J.A. 010-022; J.A. 706-708-713; J.A. 768-807.) City and Board did not end their discovery abuses until after the supplemental summary judgment deadline passed in March 2022 to prejudice Ms. Doe. (J J.A. 768-807.) This means, at minimum, that Defendant-Appellees roughly ***doubled*** Ms. Doe's litigation time and expenses. (J.A. 001-022.)

Counter to Rule 37(b)(2)(C), the District Court issued woefully insufficient remedies to Ms. Doe, a private citizen with civil rights claims against governmental officials and agencies with superior litigation resources at their disposal. *Contra* Belk, 269 F.3d at 348 (holding "less drastic sanctions" than awarding attorneys' fees and costs for addressing the impact of discovery abuses "would not have been effective"); *see* Mut. Fed. Savings & Loan Assoc., 872 F.2d at 92 (warning "not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct") (*citing* Nat'l Hockey League, 427 U.S. at 643 & Wilson, 561 F.2d at 504). In National Hockey League, the U.S. Supreme Court reversed an appellate court to affirm a district court's sanctions under Rule 37, citing 17 months of discovery misconduct with numerous extensions, which demonstrated the sanctioned party's "callous disregard of responsibilities counsel owe[d] to the Court and to their opponents." 427 U.S. at 640. The Court found the appellate court wrongly substituted its own judgment regarding sanctions but should have stayed within the scope of review because, like in this case, it had not questioned any finding of facts to justify reconsideration of the sanctions. *Id*. at 641–42 (finding that the district court had patiently sought compliance before finding the defendant's responses to be "grossly inadequate" and rejecting the "lenity" of the appellate court to "wholly supplant other and equally necessary considerations

40

embodied in . . . Rule [37].").  The Fourth Circuit should likewise reject the District Court's lenity in this case and reinstate the Magistrate's recommended sanctions to fully remedy the impact of the discovery abuses on Ms. Doe under Rule 37(b)(2)(C).

## **CONCLUSION**

For all the foregoing reasons, this Court should reverse the District Court's grant of summary judgment on Counts II, IV, V, and VII, and the District Court's ruling on the identified motions *in limine*, and, as a result, the directed verdict on Count VI and jury verdict on Count I, as well as reinstate the Magistrate's sanction recommendations.

SUBMITTED BY:

_____
Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing Opening Brief is under 13,000 words using

a proportionally spaced typeface of Times New Roman in size 14 font.  Specifically,

this Brief is 10,116 words in length.

SUBMITTED BY:

_____

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all the attorneys of record using the Court's CM/ECF system, which will send notification of such filing to them as CM/ECF participants.

| Terry L. Wallace **Wallace Law Firm, PLLC** 6000 Fairview Road Suite 1200 Charlotte, NC 28210 T: (704) 626-2903 F: (704) 626-3476 teryy@wallacelawnc.com | Steven A. Bader Patrick H. Flanagan Stephanie H. Webster **Cranfill Sumner, LLP** P.O. Box 30787 Charlotte, NC, 28230 T: (704) 332-8300 F: (704) 332-9994 sbader@cshlaw.com phf@cshlaw.com swebster@cshlaw.com | Lori R. Keeton Law **Offices of Lori Keeton** 6000 Fairview Road, Suite 1200 Charlotte, NC 28210 T: (704) 575-9204 F: (704) 919-5059 lkeeton@lorikeetonlaw.com |
|---|---|---|
| *Attorney for Defendant-Appellees Anthony Perkins and Charlotte-Mecklenburg School Board of Education* | *Attorneys City of Charlotte* | *Attorney for Defendant-Appellees Bradly Leak and City of Charlotte* |

SUBMITTED BY:

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*