Case No. 23-1182

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

JANE DOE,

*Plaintiff-Appellant*,

v.

CHARLOTTE MECKLENBURG BOARD OF EDUCATION, BRADLEY
LEAK, ANTHONY PERKINS, AND CITY OF CHARLOTTE,

*Defendants-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE
3:18-CV-00586-RJC-DSC
District Judge Robert J. Conrad

_____

**REPLY BRIEF OF PLAINTIFF-APPELLANT**
_____

SUBMITTED BY:

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

ARGUMENTS ............................................................................2

I.    This Court Must Accept as Fact the Jury's Finding that Q.W. Kidnapped and Sexually Assaulted Ms. Doe on November 3, 2015 ...................................2

II.   Defendants-Appellees' Brief Highlights the Genuine Factual Disputes Precluding Summary Judgment for Leak and Perkins. ...................................2

      A. Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012) does not apply as Leak was an agent of Board while an SRO ...................................3

      B. This case is distinguishable from Feminist Majority Foundation v. Hurley, 911 F.3d 674 (4th Cir. 2018) because it raises § 1983 Title IX claims and alleges direct liability by Leak and Perkins ..........................4

      C. Defendants-Appellees' brief highlights through omission the genuine disputes of material fact precluding immunity defenses and summary judgment ...................................................................9

III.  The Court Should Reverse the District Court's Arbitrary Motion *in Limine* Rulings and the Final Judgments Derived Therefrom ...................................11

      A. Ms. Doe preserved her appeal of the Rule 50 judgment and should be granted a new trial with Leak's internal affairs history admitted as evidence to prove Count VI........................................................12

      B. Defendants-Appellees intentionally spoliated evidence, making the District Court's denial of an adverse inference arbitrary and an impediment to Ms. Doe winning Count I at trial ...................................15

IV.   Ms. Doe's Appeal Focuses on the Reduced Attorneys' Fees and Costs Awarded under Rule 37(b)(2)(C) ....................................................19

i

CONCLUSION .....................................................................................24

CERTIFICATE OF COMPLIANCE ....................................................25

CERTIFICATE OF SERVICE ..............................................................26

# TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .............................9

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ...................................8

Brosseau v. Haugen, 543 U.S. 194 (2004) ..................................8

Buckley v. Mukasey, 538 F.3d 306 (4th Cir. 2008) ...............................17

Caraway v. City of Elizabeth City, North Carolina, 854 Fed. Appx. 472 (4th Cir. 2021) ........................................................13

Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979) .................................9

District of Columbia v. Wesby, 583 U.S. 48 (2018) ...........................7, 8

Doe v. Fairfax County School Board, 1 F.4th 257 (4th Cir. 2021) .................10–11

Dorman v. Annapolis OB-GYN Associates, P.A., 781 Fed. Appx. 136 (4th Cir. 2019) .......................................................18

E.I. DuPont de Nemours & Company v. Kolon Industries, Inc., 564 Fed. Appx. 710 (4th Cir.), *cert. denied,* 574 U.S. 987 (2014) .................................15

Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012) ...........................i, 1, 3

Feminist Majority Foundation v. Hurley, 911 F.3d 674 (4th Cir. 2018) ...i, 1, 4, 7, 8

Gilliam v. Sealey, 932 F.3d 216 (4th Cir. 2019) .....................................7

Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494 (D. Md. 2009) ................16

Goodyear Tire & Rubber Company v. Haeger, 581 U.S. 101 (2017) ..............23–24

Hope v. Pelzer, 536 U.S. 730 (2002) .......................................8

Huskey v. Ethicon, Inc., 848 F.3d 151 (4th Cir. 2017) .........................13

*In re* D.D., 554 S.E.2d 346, *appeal dismissed and disc. review denied*, 354 N.C. 572 (2001) .................................................................................3

*In re* S.W., 614 S.E.2d 424 (N.C. Ct. App. 2005) ....................................3

Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) .........................................7

Jennings v. University of North Carolina, 482 F.3d 686 (2007) .........................4, 8

Kebe *ex rel*. K.J., v. Brown, 91 Fed. Appx. 823 (4th Cir. 2004) ...........................20

Keller *ex rel*. Keller v. Deerfield Episcopal Retirement Community, Inc., 271 N.C. App. 618 (2020) ...............................................................14

Lamb v. Littman, 128 N.C. 361 (1901) .................................................14

Moore v. Equitrans, L.P., 27 F.4th 211 (4th Cir. 2022) ...........................12

Mullenix v. Luna, 577 U.S. 7 (2015) ......................................................7

New Jersey v. T.L.O., 469 U.S. 325 (1985)..............................................3

Pugh v. Louisville Ladder, Inc., 361 Fed. Appx. 448 (4th Cir. 2010) ..................15

Sauers v. Winston-Salem/Forsyth County Board of Education, 179 F.Supp.3d 544 (M.D.N.C. 2016) .....................................................................13

Schultz v. Capital International Security, Inc., 466 F.3d 298 (4th Cir. 2006) .......13

Smith v. Jackson City Board of Education, 608 S.E.2d 399 (N.C. App. 2005)........3

Stanley v. Brooks, 112 N.C. App. 609 (1993) ........................................14

United States v. Chisholm, 652 Fed. Appx. 196 (4th Cir. 2016) ..........................11

United States v. Banks, 482 F.3d 733 (4th Cir. 2007) ..............................12

United States v. Miller, 61 F.4th 426 (4th Cir. 2023) ..............................15

United States v. Vidacak, 553 F.3d 344 (4th Cir. 2009) ..........................14

<u>Vodusek v. Bayliner Marine Corporation</u>, 71 F.3d 148 (4th Cir. 1995) ...............18

<u>Wall v. Rasnick</u>, 42 F.4th 214 (4th Cir. 2022) ..................................................15–16

**STATUTES**

Fed. R. App. P. 28 ...............................................................................12

Fed. R. Civ. P. 37 ........................................i, 1, 16, 18, 19, 20, 22, 23, 24

Fed. R. Civ. P. 50 ..........................................................i, 1, 12, 13

Fed. R. Civ. P. 72 ................................................................1, 19, 20

N.C. Gen. Stat. § 14-202.4 ...................................................................3

# **INTRODUCTION**

Regarding Defendants-Appellees' "Allegations" (Part I), Plaintiff-Appellant Jane Doe ("Ms. Doe") replies that this improperly challenges the jury's findings that Q.W. kidnapped and orally raped her.  Regarding summary judgment (Part II), Ms. Doe replies that (A) Leak is a School Resource Officer (SRO), so <u>Evans v. Chalmers</u>, 703 F.3d 636 (4th Cir. 2012) does not apply; (B) <u>Feminist Majority Foundation v. Hurley</u>, 911 F.3d 674 (4th Cir. 2018) is distinguishable because she brought § 1983 Title IX claims against Bradley Leak and Anthony Perkins, who also had "fair warning" not to destroy and hide evidence for her § 1983 Equal Protection claims; and (C) Defendants-Appellees' brief omits factual disputes precluding summary judgment and immunity defenses.  Regarding the challenged motions *in limine* and related rulings (Part III), Ms. Doe replies (A) her right to appeal the Rule 50 judgment is preserved and she showed that the District Court's arbitrary exclusion of Leak's internal affairs history impeded her ability to prove Count VI (Negligent Employment) at trial; and (B) the District Court arbitrarily denied Ms. Doe an adverse inference under Rule 37(e) despite Defendants-Appellees intentionally spoliating evidence, which impeded her full victory on the Count I (Title IX) jury verdict.  Finally, regarding sanctions (Part IV), Rule 37(b)(2)(C) obligated the District Court to award Ms. Doe two years of expenses caused by the noncompliance of Charlotte-Mecklenburg Board of Education (Board) and City of Charlotte (City).

## **ARGUMENTS**

### I.  This Court Must Accept as Fact the Jury's Finding that Q.W. Kidnapped and Sexually Assaulted Ms. Doe on November 3, 2015.

The jury found that Ms. Doe suffered sexual harassment at Myers Park High School (MPHS) in the form of a peer-perpetrated kidnapping and sexual assault, which this Court must accept as fact on appeal.  (JA 2376–2378.)  In their brief, Defendants-Appellees raise factual disputes to challenge these findings, despite the jury already resolving them in Ms. Doe's favor.  (Doc. #59, p. 1–21.)  At trial, Ms. Doe testified in detail about (1) her texts with Q.W. before the incident; (2) Q.W.'s kidnapping and oral rape on November 3, 2015; and (3) the Charlotte-Mecklenburg Police Department (CMPD) interview she gave that same day (JA 1380–1522 (citing interview audio from JA 2391)[1]).  In their brief, Defendants-Appellees eventually admit that the jury found Ms. Doe suffered student-on-student sexual harassment. (Doc. #59, p. 54.)  As such, this Court should not indulge their improper efforts to appeal these factual findings on appeal.

### II. Defendants-Appellees' Brief Highlights the Genuine Factual Disputes Precluding Summary Judgment for Leak and Perkins.

---

[1] Defendants-Appellees mischaracterize this interview.  (Doc. #59, p. 16.)  Ms. Doe repeatedly told Det. Bill Clark that she declined to skip with Q.W., who forced her into the woods (JA 2212 at 4:14–21, 2213 at 6:12–9:2, 2216 at 18:1–19:15, 2219 at 30:2–8, 2218–2219 at 29:15–30:8) and that she did ***not*** consent to oral sex (JA 2214 at 10:7–11:23, 2215 at 15:19–23, 2216 at 21:5–8, 2217 at 25:6–16), which she described as forcible since Q.W. pushed her down, forced his penis into her mouth, and pulled her hair to fellate himself (JA 2214 at 11:11–23), counter to Defendants-Appellees' false light claims that she "changed" her story (Doc. #59, p. 16, n. 5).

2

A. <u>Evans v. Chalmers</u>, **703 F.3d 636 (4th Cir. 2012) does not apply, as Leak was an agent of Board while an SRO.**

During summary judgment, City raised then withdrew <u>Evans</u> as a defense for Leak by admitting that it had waived immunity during oral arguments (Dist. Ct. Doc. #71, p. 15; Dist. Ct. Doc. # 168 at 43:5–17). Prior to this, in opposition, Ms. Doe argued that Leak was an SRO, which North Carolina distinguishes from law enforcement officers for purposes of liability and immunity, as they are recognized agents of schools. (Dist. Ct. Doc. #83 at 22–23; Doc #55, p. 3 (*citing* N.C. Gen. Stat. § 14–202.4(d)(3a) (defining SROs as "regularly present in a school for the purpose of promoting and maintaining safe and orderly schools.")), p. 19, n. 12 (*citing* <u>*In re*</u> <u>S.W.</u>, 614 S.E.2d 424, 426–27 (N.C. Ct. App. 2005) (*quoting* <u>*In re* D.D.</u>, 554 S.E.2d 346, 352, *appeal dismissed and disc. review denied*, 354 N.C. 572 (2001) (citing <u>N.J.</u> <u>v. T.L.O.</u>, 469 U.S. 325 (1985)); <u>Smith v. Jackson City Bd. of Educ.</u>, 608 S.E.2d 399, 411 (N.C. App. 2005).) In their brief, Defendants-Appellees concede that Leak served as an SRO at MPHS during the relevant times. (Doc. #59, p. 2–3.[2]) In its summary judgment ruling, the District Court cited but properly declined to apply <u>Evans</u>. (JA 802.) This Court should likewise find <u>Evans</u> does not apply to Leak for common law obstruction of justice claims (Count VII), as he was an SRO.

---

[2] However, they wrongly claim Leak served as an SRO for Right Moves for Youth when he was the CMPD liaison. (JA 224–225 at 47:22–48:6.)

**B. This case is distinguishable from <u>Feminist Majority Foundation v. Hurley</u>, 911 F.3d 674 (4th Cir. 2018) because it raises § 1983 Title IX claims and alleges direct liability by Leak and Perkins.**

Defendants-Appellees allege <u>Hurley</u> prevents Ms. Doe from prevailing on her § 1983 Equal Protection and Title IX claims (Count II). (Doc #59 p. 27, 38–43; JA 66–69, ¶¶ 123–135.) This Court held officials liable for deliberate indifference in <u>Jennings v. University of North Carolina</u>, 482 F.3d 686 (2007), which established a "general right to be free from sexual harassment at an educational institution." <u>Hurley</u>, 911 F.3d at 705. Relying thereon, in <u>Hurley</u>, this Court held § 1983 Equal Protection claims apply to state officials who are deliberately indifferent towards student-on-student sexual harassment. *See id*. at 702. However, the Court found "controlling [§ 1983 Equal Protection] authority" had not provided Hurley "fair warning" that his "deliberate indifference to student-on-student sexual harassment" would be unconstitutional. *See id*. at 704. Here, however, Ms. Doe raised § 1983 Title IX claims with significant controlling authority providing fair warning to Leak and Perkins about her federal civil rights since 1998. (JA 60–63, ¶¶ 92–104).

This case is further distinguishable from <u>Hurley</u> because Leak and Perkins had "fair warning" their obstruction was unconstitutional. This Court did not hold Hurley indirectly liable for his deliberate indifference towards the wrongdoing of others by "downplaying" serious, widespread social media-based threats by taking only "short-term" and "limited steps." 911 F.3d at 689–91. In this case, however,

this Court should find Leak and Perkins directly liable for their own wrongdoing by *hiding and destroying evidence* during active campus and criminal investigations, in an effort to conceal their deliberate indifference towards an active kidnapping that resulted in a foreseeable sexual assault (JA 66-69, ¶¶ 123, 132–133 (citing their bad faith conduct)[3]). Specifically, the record shows: [4]

- ████████████████████████████████
  ████████ (JA 3203) before changing Board's disciplinary record from a sexual offense to ████████ (JA 2363, 3202). In so doing, Perkins excluded the following contrary evidence from the final Board report (JA 2373–2374):

  o Q.W. *sexually harassing* Ms. Doe by pressuring her via text to skip class for a sexual encounter while she repeatedly *declined* to do so the day before and of the incident (JA 2292–2304).

  o ████████████████████████████████
    ████ (JA 3288, 3084),[5] ████████████
    ████████████████████████ (JA 3290–3291).[6]

  o Ms. Doe mouthing "help" when found with Q.W. outside the bamboo forest, ████████████████ (JA 2665).

  o Ms. Doe promptly disclosing a sexual "attack" by texts (JA 2661–2662 (recounting how Perkins interpreted this as a sexual assault)).[7]

---

[3] The District Court found this misconduct continued during litigation. (JA 707.)

[4] This section counters Defendants-Appellees' claims that Ms. Doe has "no evidence" of obstruction or bad faith (Doc. #59, p. 29, 35). *See infra,* Part II(C).

[5] Perkins denied seeing the clip the day of the incident (JA 2374, 3288), but the CMPD confirmed he pulled it for them that day (JA 3200).

[6] Board did not produce this clip during discovery, only two others. (JA 2389, 2390.)

[7] This contradicts Defendants-Appellees' claims that Perkins did not withhold Ms. Doe's sexually assault report. (Doc. #59, p. 32.)

- ███████████████████████████████████████████
  ██████████████████████████████ (JA 3284.)

- Leak gave contradictory accounts by:

    o Confirming J.D.'s kidnapping report (JA 2375, 3205, 366-367 at
      209:11–210:7) then "striking" his deposition testimony to deny
      the same (JA 369 at 212:5–21).

    o ████████████████████████████████████████
      ████████████████ (JA 2461)
      (JA 2814 at 5:7–22).[8]

    o ██████████████████████████████████████
      ███████ (JA 3200) but telling Board he saw her "headed back" to
      MPHS (JA 2375).[9]

- Ms. Doe had broken glasses, muddy boots, disheveled hair, and a semen
  stain across her sweater (JA 654–658, 661–663, 674–676, 1472–1474,
  2167–2174, 2214 at 10:7–12:3, 2520, 3205–3206,), and a rape kit
  preserved the latter (JA 1956–1959), but:

    o Perkins' final Board report claimed that "[Ms. Doe's] clothes
      were not dirty, and her hair was not out of place," (JA 2373), ███
      ███████████████████████████ (JA 2631, ¶ 14).

    o ████████████████████████████████████████
      ████████████████████████████████████████
      ██████████ (JA 2461).

    o ████████████████████████████████████████
      ███████[10]██████████████████████████████

---

[8] Leak has ***misled*** internal affairs investigators at least three times in his career. (*See also* Doc. #55, at 20 (*citing* JA 2414–2417 at 75:13-78:6, *contra* JA 3198).)

[9] In their brief, Defendants-Appellees adopt the latter but not the former account, presumably to minimize Leak's credibility issues. (Doc. #59, p. 5, 8.)

[10] ████████████████████████████████████████████████████
██████ (JA 3205), ██████████████████ (JA 2630, ¶11).

████████████████████████████████████
██████████████████████████████████ (JA 3074–3077).

o Leak admitted during his deposition that the semen stain could have been on Ms. Doe's sweater (JA 407–410).[11]

• ████████████████████████████████████
(JA 2461, 2817–2818), even though Ms. Doe reported the "attack" to him (JA 496–498, 1477).[12]

• Leak threatened Ms. Doe against making a false crime report in front of her father, as she affirmed her report (JA 499–450, 615, 672, 1482).

Per her opening brief, Leak and Perkins had fair warning that this recounted obstruction was unconstitutional. (Doc # 55, p. 25–26 (*citing* Gilliam v. Sealey, 932 F.3d 216, 241 (4th Cir. 2019) (citing Jean v. Collins, 221 F.3d 656, 663 (4th Cir. 2000) (*per curiam*)).). While Defendants-Appellees complain these are Fourth Amendment cases (Doc. #59, p. 39–40), Hurley held that well-established legal principles are those that "clearly prohibits the ***official's conduct in the particular circumstances before him***." 911 F.3d at 704 (internal marks omitted) (*quoting* D.C. v. Wesby, 583 U.S. 48, 63 (2018) (emphasis added)); *see also* Mullenix v. Luna, 577

---

[11] Contrarily, in their brief, Defendants-Appellees cite Leak's claim that "Jane Doe looked the same . . . as . . . earlier that morning." (Doc. #59, p. 10 (*citing* JA 403.))
[12] In their brief, Defendants-Appellees provide Leak's disputed account that: "Jane Doe reported that she felt uncomfortable" during the incident. (Doc. #59, p. 11.) ***This is not her testimony*** (JA 496–498), it is Leak's **falsified version** from the "noncriminal" incident report (JA 2461). Notably, Leak previously used this same misreporting tactic to previously and wrongfully dismiss S.B.'s forcible rape report. (JA 936–940 (*citing* Exhibit 186 (JA 2194–2207)).)

U.S. 7, 12 (*quoting* <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011) (stating there is no need for "a case directly on point" when "existing precedent . . . place[s] the . . . constitutional question beyond debate") (citations omitted)). Between <u>Jennings</u> prohibiting deliberate indifference toward sexual harassment, and § 1983 Fourth Amendment precedent obstruction of justice, Leak and Perkins had fair warning.

Even if this Court declines to consider § 1983 Fourth Amendment precedent to show Leak and Perkins had fair warning not to destroy and withhold evidence, the U.S. Supreme Court recognizes "rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear," as we have here. <u>Wesby</u>, 583 U.S. at 64 (*citing* <u>Brosseau v. Haugen</u>, 543 U.S. 194, 199 (2004) (*per curiam*)). This general constitutional rule prevents Leak and Perkins from claiming qualified immunity for their egregious obstruction of justice. *See, e.g.,* <u>Hope v. Pelzer</u>, 536 U.S. 730, 740–41 (2002) (reversing qualified immunity granted to correctional guards that chained an inmate in the sun without his shirt for seven hours without sufficient water or any bathroom breaks). During supplemental summary judgment, Ms. Doe asked the District Court to apply the general constitutional rule for Count II (Dist. Ct. Doc. #150, p. 17–18), which was ignored (JA 795–798). This rare case is distinguishable from <u>Hurley</u>, such that this Court should find fair warning or apply the general constitutional rule to reverse summary judgment for Leak and Perkins.

**C. Defendants-Appellees' brief highlights through omission the genuine disputes of material fact precluding immunity defenses and summary judgment.**

Ms. Doe has shown a reasonable jury will believe her account over those of Leak and Perkins.  (JA 2376–2378.)  *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  In their brief, Defendants-Appellees' treat the CMPD's review of the incident as independent verification rather than what it is— ***a derivative of Leak's obstruction*** after he negligently failed to promptly intervene during an active kidnapping to prevent a foreseeable sexual assault.  (Doc. #59, p. 13–19.)  This case turns on whether Leak is credible, and he is not.  *See supra*, Part II(B).  *Cf.* <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979) (vacating summary judgment where "conflicting versions of the facts" about whether a guard allowed an assault and delayed medical care "require[d] credibility determinations").  Here, Leak irreparably tainted the CMPD's investigation by calling officials to spread his mollifying version of events before they could speak to Ms. Doe:

- ███████████████████████████████████████████████████████
███████████████████████████████████ (JA 2995–2998).

- ███████████████████████████████████████████████████████
███████████████████████████████████ (JA 3026–3035).

- ███████████████████████████████████████████████████████
███████████████████ (JA 2834–2835).

- ███████████████████████████████████████ (JA 3076).

Perkins likewise obstructed Board's investigation by withholding evidence that he shared with the CMPD. *See* Part II(B). As such, Leak and Perkins intentionally obstructed City and Board's respective investigations, denying Ms. Doe justice.

Defendants-Appellees' brief implausibly claims there is "no evidence – none – that . . . Leak lied about what Jane Doe told him [about the incident]." (Doc. #59, p. 21.) However, Leak falsified S.B.'s rape report in an almost identical manner to how he falsified Ms. Doe's oral rape report (JA 936–940 (*citing* JA 2194–2207), 2461). Specifically, when S.B. reported a forcible rape (JA 936–940), Leak filed a "non-criminal" incident report with a confidential narrative falsely claiming she was not "comfortable" during sex but denied any force (JA 2204–2205). After Ms. Doe reported an "attack" leaving her covered in semen (JA 496), ████████████ ██████████████████████████████████ (JA 2461–2464[13]). But Leak knew this was a sexual assault because he ██████████████████ (JA 496, 2995–2998, 3026–3035.) He also threatened Ms. Doe against making a false report, which she affirmed was true in front of her father (JA 499–450, 615, 672, 1482). Again, <u>Doe v. Fairfax County School Board</u>, 1 F.4th 257, 263 (4th Cir.

---

[13] ████████████████████████████████████ (*Id*.; JA 3033.)

10

2021), squarely applies, as Leak was an SRO receiving an objective report of sexual assault on behalf of MPHS, regardless of whether he (or the CMPD) believed it.

Finally, drawing all inferences in Ms. Doe's favor, as required during *de novo* summary judgment review, this Court should find Leak and Perkins successfully obstructed Ms. Doe's chance at justice based on the following:



- Perkins changing Board's sexual offense records to ███████████ ████████████████████████████████ ████████████████ (JA 2363, 3202, 3303).

- ██████████████████████████████████████████ ████████████████████████████████████████ (JA 3076).

- ███████████████████████████████████████ ███████████████████ (JA 3205–3206, 2876–2891).

As Ms. Doe has argued, Leak and Perkins are liable for failing to intervene during her kidnapping to prevent a foreseeable sexual assault (JA 66–69, 72–76), and they hid their own liability through obstruction (JA 79–81).  Based on such bad faith actions, this Court should deny them qualified and public official immunity, reverse summary judgment, and remand Counts II, IV, V, and VII for a jury trial to resolve the factual disputes regarding the same.  *See supra*, Part II(B).

## II. The Court Should Reverse the District Court's Arbitrary Motion *in Limine* Rulings and the Final Judgments Derived Therefrom.

This Court should find the District Court abused its discretion by arbitrarily denying Ms. Doe's evidentiary motions without providing any reasoning in support. (JA 834, 835.)  *See* <u>U.S. v. Chisholm</u>, 652 Fed. Appx. 196, 198 (4th Cir. 2016)

(*quoting* U.S. v. Banks, 482 F.3d 733, 742–43 (4th Cir. 2007) (internal quotation marks omitted) (stating this Court cannot "substitute our judgment for that of the district court" to instead only "determine whether the . . . exercise of discretion, considering the law and the facts, was arbitrary or capricious") (internal quotation marks omitted).  This Court has found abuse of discretion where, as here, a district court decides a motion *in limine* without addressing the grounds raised by the parties. *See* Moore v. Equitrans, L.P., 27 F.4th 211, 225 (4th Cir. 2022).

### A. Ms. Doe preserved her appeal of the Rule 50 judgment and should be granted a new trial with Leak's internal affairs history admitted as evidence to prove Count VI.

Counter to their brief (Doc. #59, p. 46), Defendants-Appellees well know that Ms. Doe preserved her right to appeal the Rule 50 judgment at trial:

> MS. DUNN: And, Your Honor, we'll just note for the record, you know, our objection to that [Rule 50] ruling based on motions in limine rulings related to the spoliation and ███████

> THE COURT: Right. You have that. Yes. You have that form the start.

(Doc. #59, p. 49 (*quoting* JA 1599)), in her appeal notice (JA 2385), and in her brief:

> II. Did the District Court err by (A) granting a Rule 50 judgment to Defendant-Appellee City of Charlotte on Count VI (Negligent Employment) after it arbitrarily excluded Leak's internal affairs history at trial, which showed City had notice of his unfitness to serve as a School Resource Officer (SRO)[?]

(Doc. #55, p. 2, 26–27.)  Ms. Doe also satisfied Fed. R. App. P. 28(a)(8) by citing this Court's *de novo* review standard for Rule 50(a) motions.  (*Id.*, p. 30–31, n. 14

(citing <u>Caraway v. City of Elizabeth City, N.C.</u>, 854 Fed. Appx. 472, 472–473 (4th Cir. 2021) (*per curiam*)).)  As such, she has not waived her this appeal ground.

Ms. Doe's arguments against the District Court's exclusion of Leak's internal affairs history at trial are also her arguments against the Rule 50 judgment.  Focusing on the latter, this Court has held that:

> Judgment as a matter of law is appropriate only if, viewing the evidence in a light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party.

<u>Caraway</u>, 854 Fed. Appx. at 472 (*quoting* <u>Huskey v. Ethicon, Inc.</u>, 848 F.3d 151, 156 (4th Cir. 2017) (omitting internal quotation marks)).  Here, this Court should find that, had the jury seen Leak's internal affairs history— ███████████████ ███████████████████████████████████████████████████████ ███████████ (JA 230–233, 3194–3199)—they reasonably could have concluded that City had notice of Leak's unfitness.  *See* <u>Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ.</u>, 179 F.Supp.3d 544, 556 (M.D.N.C. 2016) (requiring an employer to have notice of an employee's "unfitness or bad habits" to establish a negligent employment claim).  Ms. Doe needed this evidence to prove Count VI at trial.  *See* <u>Schultz v. Capital Int'l Sec., Inc.</u>, 466 F.3d 298, 310 (4th Cir. 2006) (requiring an evidentiary error to have affected a party's substantial rights before reversal).

While Defendants-Appellees argue ███████████████████████ ████████████████████████████████████████████ (Doc. #59, p. 47),

this is not the District Court's ruling. (JA 834.) *See* U.S v. Vidacak, 553 F.3d 344, 348 (4th Cir. 2009) ("[T]his Court may not substitute its judgment for that of the district court") (citation omitted). In North Carolina, an employer receives notice of unfitness through an employee's "past conduct, bad temper or otherwise." *See* Keller *ex rel*. Keller v. Deerfield Episcopal Retire. Comm., Inc., 271 N.C. App. 618, 628 (2020) (*quoting* Stanley v. Brooks, 112 N.C. App. 609, 611 (1993) (citation omitted)). Defendants-Appellees create a strawman argument that Ms. Doe merely wants to make Leak "look bad" (Doc. #59, p. 48), but she has argued his ███████ ██████████████████ is vital context for the jury to determine City's knowledge of his unfitness to serve as SRO and his negligent mishandling of intimate partner violence complaints by minor female students (Doc. #55, p. 28–31). Indeed, City ***permanently*** kept Leak as an SRO ████████████████████████████████ █████ (JA 251–254, 3199), showing it knew about his bad temper and unfitness to serve over a vulnerable population. *See* Lamb v. Littman, 128 N.C. 361 (1901) (finding an employer liable for a child's harm after knowingly placing the bad-tempered supervisor over child workers). Here, City knew ██████████████ ████████████, so he was unfit to serve as an SRO addressing intimate partner violence complaints brought by minor female students ███████████.

In its sparse evidentiary ruling (JA 834), the District Court failed to indicate whether it reviewed Leak's internal affairs history under Rule 403 as "a rule of

inclusion" favoring admissibility to "exclude[] only sparingly" probative evidence at trial. <u>U.S. v. Miller</u>, 61 F.4th 426, 429 (4th Cir. 2023) (citation omitted). It also failed to indicate whether it gave "maximum reasonable probative force [to Leak's history] and . . . minimum reasonable prejudicial value" when ruling. *Contra* <u>E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.</u>, 564 Fed. Appx. 710, 715 (4th Cir.), *cert. denied,* 574 U.S. 987 (2014) (citation omitted). Indeed, the District Court failed to indicate any "judicially recognized factors constraining its exercise of discretion." (JA 834.) *Contra* <u>Pugh v. Louisville Ladder, Inc.</u>, 361 Fed. Appx. 448, 451 (4th Cir. 2010) (citation omitted). Therefore, this Court should find that the District Court arbitrarily excluded Leak's internal affairs history to remand the motion back with instructions for a new trial allowing Ms. Doe to show City knew of Leak's unfitness.

**B. Defendants-Appellees intentionally spoliated evidence, making the District Court's denial of an adverse inference arbitrary and an impediment to Ms. Doe winning Count I at trial.**

In their brief, Defendant-Appellees guess why the District Court denied Ms. Doe's request for an adverse spoliation inference. (*But see* JA 835 (writing only "DENIED").) Again, the District Court did not indicate any "judicially recognized factors limiting its discretion" or any potential reliance upon "erroneous factual or legal premises," making this ruling arbitrary on its face. *Contra* <u>Pugh</u>, 361 Fed. Appx. at 451. In <u>Wall v. Rasnick</u>, this Court found an abuse of discretion when only

judicial "guesswork" supported a denied spoliation motion.  42 F.4th 214, 222 (4th Cir. 2022) (noting the magistrate did not develop a complete record of the elements).

Despite the unknown grounds for this ruling, Defendant-Appellees first argue a lack of timeliness, citing the non-precedential Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d. 494 (D. Md. 2009).[14]  (Doc #59, p. 50.)  Defendant-Appellees never raised this argument to oppose Ms. Doe's motion (JA 821–824) but it is not availing regardless.  Ms. Doe timely raised spoliation arguments in her original summary judgment opposition on December 9, 2020 (JA 8–9 (citing Dist. Ct. Doc. #83, p. 12–13, 17, n. 11)) and supplemental opposition on March 7, 2022 (JA 16 (Dist. Ct. Doc. #150 at 15–16)), but the District Court did not address her arguments in its August 12, 2022 ruling.  (JA 21–22, 773–807.)  Ms. Doe thus raised her arguments again on January 4, 2023, during motions *in limine.* (JA 28 (Dist. Ct. Doc. #258–1).)

Second, Defendant-Appellees wrongly argue that Ms. Doe failed to prove the intent required for an adverse spoliation inference.  *See* Rule 37(e)(2)(B).  Ms. Doe did argue Defendants-Appellees intentionally failed to preserve video evidence after citing these clips to undermine Ms. Doe's claims during the criminal and campus investigations while knowing they would be destroyed under a retention policy.  (*Id.*; Doc # 55 at 33 ("Perkins egregiously failed to preserve the MPHS footage despite

---

[14] Rule 37 "does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions."  Goodman, 632 F. Supp. 2d. at 507.

an ongoing criminal investigation into the incident"); JA 3283-3291 (showing Perkins knew videos were destroyed every two weeks.)   The record shows:

-  (JA 3084–3085, 3200).

- (JA 2374, 3288.)

- (JA 3290.)

- (JA 3291.)

- Only two MPHS video clips were produced in discovery, ███████ (JA 2389, 2390).[15]

- (JA 3284.)

In <u>Buckley v. Mukasey</u>, this Court found a spoilation motion improperly denied after the government failed to preserve evidence scheduled for destruction, noting the district court made an "error of law" by "equating the intentional conduct necessary"

---

[15] Defendants-Appellees claim the CMPD preserved five MPHS videos, but this is ***untrue***, as only two clips are from MPHS (Doc. #59, p. 55, n. 18). They also claim no video showed the incident (*id.*)███████████████████████ ████████████████ (JA 3085).  The District Court cited this type of "gamesmanship" when awarding sanctions.  (JA 790.)  These woods are Board property (JA 2305), and Defendants-Appellees are correct that Leak failed to monitor them (Doc. #59, p. 3), counter to his SRO contract (JA 2161 at ¶ 1(b)(A)).

under Rule 37(e) with "bad faith."  538 F.3d 306, 323 (4th Cir. 2008).  In <u>Vodusek</u> <u>v. Bayliner Marine Corporation</u>, this Court held that Rule 37(e) "intent" is found when "a proponent's intentional conduct contributes to the loss or destruction of evidence."  71 F.3d 148, 155–56 (4th Cir. 1995) (finding a party, during its own investigation into an incident, failed to preserve a boat, denying the other party such access for litigation).  As there is no reasoning for the evidentiary ruling in this case, it is impossible to say whether the District Court made any intent determination, let alone one under the correct standard.  (JA 835.)  Without a Rule 37(e) analysis, this Court should find the District Court's denial arbitrary and remand with instructions.

In her opening brief (Doc. #55, p. 27), Ms. Doe cited <u>Dorman v. Annapolis</u> <u>OB-GYN Associates, P.A.</u>, where this Court held an evidentiary error must be harmful to a party's substantive rights before it would reverse it.  781 Fed. Appx. 136, 142 (4th Cir. 2019).  Jury verdicts are not overturned when "supported by overwhelming evidence" and the evidentiary error's correction "would [not] have produced any different result."  <u>Dorman</u>, 781 Fed. Appx. at 142 (citations omitted). That is not the case here.  Here, the jury found for Ms. Doe on all Title IX elements *except* for deliberate indifference.  (JA 2376–2378.)  The spoliated videos would have changed the jury's verdict regarding Board's deliberate indifference in three important ways:

(1) ████████████████████████████████ (JA 3083–
3085, 3200) ███████████████████ (JA 3202);[16]

(2) confirming Leak witnessed the kidnapping (JA 3200 ██████
████████████████████████████████████████
████████████████ JA 3205 █████████
███████████████████████████████████
██████[17] but failed to intervene and prevent the foreseeable sexual assault
in the bamboo forest (JA 2815–2816);[18] and

(3) ████████████████████████████████████
██████████████ (JA 3288), ██████████████
████████████████████████ (JA 2363, 3202).

Had Defendants-Appellees preserved the video ████████████████

████████████, a jury would have found for Ms. Doe on deliberate indifference

for Count I, against Leak on Counts VI, V, and VII, as well as against City on Count

VI.  This Court should therefore remand the spoilation motion and grant a new trial.

## IV.   Ms. Doe's Appeal Focuses on the Reduced Attorneys' Fees and Costs Awarded under Rule 37(b)(2)(C).

Ms. Doe agrees the Magistrate's recommendation to strike Board and City's

summary judgment motions was dispositive (JA 771), warranting *de novo* review

---

[16] This contradicts Defendant-Appellees' claim that "Board had not received any information to credibility substantiate Jane Doe's claim that she was kidnapped," such that Perkins needed her statement for his investigation.  (Doc. #59, p. 19.)

[17] Ms. Doe "didn't know" if Leak saw the kidnapping but thought he did not.  (Doc. #59, p. 5–6.)  The video would have resolved this open question.  (JA 3200.)

[18] Defendant-Appellees wrongly cite "Hassell Street" as the dangerous location known to Leak, but it is merely the route to the dangerous "bamboo forest."  (Doc. #59, p. 8; *but see* JA 2815–2816).  Their brief confirms Leak and Perkins failed to search the bamboo forest first, and they never went in because it was wet and muddy. (Doc. #59, p. 9 (citing JA 400–402, 2630, ¶ 10); 2659–2660)

under Rule 72(b)(3) (Doc. #59, p. 56–57). However, she is not appealing this denied

remedy (JA 788–790), which was permitted but not required under Rule 37(b)(2)(A)

because she defeated these motions (JA 790–795, 806–807), making this moot.

Instead, Ms. Doe appeals the reduced sanctions mandated by Rule 37(b)(2)(C).

This Court held that a magistrate's order granting attorneys' fees and costs is

"undoubtedly a nondispositive matter covered by Rule 72." <u>Kebe</u> <u>ex rel</u>. <u>K.J., v.</u>

<u>Brown</u>, 91 Fed. Appx. 823, 827 (4th Cir. 2004); Fed. R. Civ. P. 72(a) (defining

nondispositive matters as those that do not dispose of a party's claim or defense)).

Rule 72(a) allows a district court judge to "modify or set aside any part of the order

that is clearly erroneous or is contrary to law." (JA 786–788.) Confusingly, in this

case, while the Magistrate' found Ms. Doe entitled to two years' worth of sanctions

for "Motions" caused by City and Board's noncompliance with court orders (JA

768–770), he failed to issue a nondispositive award for this and instead only

recommended the District Court Judge issue sanctions of struck pleadings ***coupled***

with a reduced award compensating for two sanction motions only (JA 771).

In her opening brief, Ms. Doe argued the Magistrate properly awarded her two

years' worth of fees and costs based upon this finding: "Plaintiff is entitled to an

award of her costs including reasonable attorney's fees incurred in preparation of

*these Motions*." (JA 770 (emphasis added).) While the Magistrate did not define

"Motions" (*id*.), his findings summarized several by Ms. Doe tied to the ***three court***

20

*orders* violated by Defendants-Appellees (JA 768–770). Specifically, he cited: (1) the sanction request in Ms. Doe's Rule 56(d) motion (JA 768 (referencing Dist. Ct. Doc. #92)), which he had reserved ruling on in the first violated court order (JA 706–708);[19] (2) the detrimental impact of City and Board's ongoing discovery misconduct on Ms. Doe's summary judgment oppositions (JA 769–770 (referencing Dist. Ct. Doc. #81 #83, #83, #150)); and (3) her motions to compel and for sanctions against Defendants-Appellees for ongoing violations of two more court orders, which are:

- Plaintiff's Motion to Compel Discovery by Defendant Charlotte-Mecklenburg Board of Education and Anthony Perkins Pursuant to FERPA (JA 769 (citing Dist. Ct. Doc. #119).)

- [Plaintiff's] Motion to Compel Outstanding Discovery by All Defendants (*id.* (citing Dist. Ct. Doc. #121).)

- Plaintiff's Motion to Compel Discovery by Defendants Board and Perkins and For Sanctions for Disobeying Discovery Orders (JA 768, 771 (citing Dist. Ct. Doc. #170).)

- Plaintiff's Motion for Sanctions Against Defendants City of Charlotte & Kerr Putney (JA 768, 771 (citing Dist. Ct. Doc. #177).)

Ms. Doe filed these "Motions" between December 9, 2020, and May 24, 2022 (JA 8–19), before the District Court Judge's summary judgment and sanction order on

---

[19] This order was granted in part to reopen discovery and denied in part "without prejudice" by denying sanctions as "premature." (JA 706–708, 768–769.)

August 12, 2022. (JA 21–22, 773–807.) Simply put, the Magistrate's findings show a broad award of two years' worth of filings, as required by Rule 37(b)(2)(C).

Relying on these findings, Ms. Doe interpreted the District Court Judge as narrowing the awarded attorneys' fees and costs mandated under Rule 37(b)(2)(C) to only those: "in connection with preparing the *CMS Sanction Motion and the City Sanction Motion*," (JA 790 (emphasis added)), which were filed between May 11 and 24, 2022 (JA 18–19).[20] Indeed, the District Court Judge denied Ms. Doe's Rule 56(d) sanction motion. (JA 807.) This narrowed award is not a "full adoption" or a "substantively and nearly virtually identical" version of the Magistrate's findings, as Defendants-Appellees' claim in their brief. (Doc. #59, p. 56, n. 19.) That said, Ms. Doe understands that they seize upon the Magistrate's "recommendations" (JA 771), limiting attorneys' fee and costs to two sanction motions when ***coupled*** with the remedy of striking pleadings (*id*.), which is narrower than the Magistrate's findings broadly awarding Ms. Doe for all the recounted "Motions" she filed. (JA 768–770.)

To make sense of this, Ms. Doe argues that—when the District Court Judge declined to strike the recommended pleadings, which were permissible remedies under Rule 37(b)(2)(A)—Rule 37(b)(2)(C) obligated him to award the full two

---

[20] Indeed, as indicated by her opposition to City's objection to the sanction (Dist. Ct. Doc. #196 at 7), Ms. Doe has always understood and argued that the Magistrate's award encompassed all her motions and oppositions harmed by the noncompliance with the District Court's orders, as mandated by Rule 37(b)(2)(C).

years' worth of attorneys' fees and costs based on the Magistrate's findings. This is because Rule 37(b)(2)(C) states:

> ***Instead of or in addition to the orders above***, the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, ***caused by the failure***, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(Emphasis added). When it denied the Magistrate's alternative remedy of striking summary judgment motions under Rule 37(b)(2)(A) (JA 771), Rule 37(b)(2)(C) mandated the District Court Judge to rely on the Magistrate's findings to fully award Ms. Doe all expenses caused by Defendants-Appellees' noncompliance with court orders. *Cf.* Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108 (2017) (requiring sanctions to be compensatory, meaning they are "calibrated to the damages caused by the bad faith acts on which it is based," so it "covers the *legal bills that the litigation abuse occasioned*.") (Emphasis added). Notably, awarding only attorneys' fees and cost for two sanction motions does not comport with Rule 37(b)(2)(C); rather, it seems it is a remedy for her motions to compel from Rule 37(a)(5)(A), rather than for the violated court orders governed by Rule 37(b)(2).

Relying on the Magistrate's broader reference to "Motions" in the findings (JA 770), the District Court Judge should have left this nondispositive award alone as it is neither "clearly erroneous" in its cataloguing of two years' worth of filings caused by the noncompliance, nor "contrary to law" based on Rule 37(b)(2)(C) and

<u>Haeger</u>, 581 U.S. at 108 (*but see* JA 788–790, 806–807). However, if this Court chooses to rely upon the Magistrate's contradictory "recommendation" section (JA 771), which only awards sanctions for two motions when **coupled** with the struck pleadings remedy (*id*.), it should find that—when the District Court Judge declined to strike the recommended pleadings under Rule 37(b)(2)(A)—the reduced award became "clearly erroneous" and "contrary to law" under Rule 37(b)(2)(C), which required the award to become the Magistrate's nondispositive findings of two years' worth of Ms. Doe's "Motions" caused by the non-compliance of Board and City.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should (1) reverse summary judgment granted to Leak and Perkins on Counts II, IV, V, and VII; (2) reverse the motions *in limine* rulings and related judgments to City on Count VI and to Board Count I, while granting a new trial for each; and (3) award sanctions that properly compensate Ms. Doe for two years of attorneys' fees and costs under Rule 37(b)(2)(C).

SUBMITTED BY:

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20006-5349
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Reply Brief is under 6,500 words using a proportionally spaced typeface of Times New Roman in size 14 font. Specifically, this Brief is 6,453 words in length excluding the signature block.

SUBMITTED BY:

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com


*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all the attorneys of record using the Court's CM/ECF system, which will send notification of such filing to them as CM/ECF participants.

| Terry L. Wallace **Wallace Law Firm, PLLC** 6000 Fairview Road Suite 1200 Charlotte, NC 28210 T: (704) 626-2903 F: (704) 626-3476 teryy@wallacelawnc.com | Steven A. Bader Patrick H. Flanagan Stephanie H. Webster **Cranfill Sumner, LLP** P.O. Box 30787 Charlotte, NC, 28230 T: (704) 332-8300 F: (704) 332-9994 sbader@cshlaw.com phf@cshlaw.com swebster@cshlaw.com | Lori R. Keeton Law **Offices of Lori Keeton** 6000 Fairview Road, Suite 1200 Charlotte, NC 28210 T: (704) 575-9204 F: (704) 919-5059 lkeeton@lorikeetonlaw.com |
|---|---|---|
| *Attorney for Defendant-Appellees Anthony Perkins and Charlotte-Mecklenburg School Board of Education* | *Attorneys City of Charlotte* | *Attorney for Defendant-Appellees Bradly Leak and City of Charlotte* |

SUBMITTED BY:

Laura L. Dunn, Esq.
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

*Attorney for Plaintiff-Appellant*

26